✎JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| Edward T. Esslinger, Gloria Glover and Ardath Rogers, and all other similarly situated | HSBC Bank USA, Inc., and HSBC Card Services, Inc. |

**(b)**   County of Residence of First Listed Plaintiff   **Philadelphia**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   **New York**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)**   Attorney's (Firm Name, Address, and Telephone Number)
Ruben Honik, Esquire, Richard M. Golomb, Esquire and Kenneth J. Grunfeld, Esq.
Golomb & Honik, P.C. 1515 Market Street, Suite 1100, Philadelphia, PA 19102;
(215) 985-9177

Attorneys (If Known)

## II.  BASIS OF JURISDICTION   (Place an "X" in One Box Only)

❑ 1   U.S. Government Plaintiff

❑ 3   Federal Question (U.S. Government Not a Party)

❑ 2   U.S. Government Defendant

☒ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III.  CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                          and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❑ 1 | Incorporated or Principal Place of Business In This State | ❑ 4 | ❑ 4 |
| Citizen of Another State | ❑ 2 | ❑ 2 | Incorporated and Principal Place of Business In Another State | ❑ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ❑ 3 | ❑ 3 | Foreign Nation | ❑ 6 | ❑ 6 |

## IV.  NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❑ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❑ 610 Agriculture | ❑ 422 Appeal 28 USC 158 | ❑ 400 State Reapportionment |
| ❑ 120 Marine | ❑ 310 Airplane | ❑ 362 Personal Injury - | ❑ 620 Other Food & Drug | ❑ 423 Withdrawal | ❑ 410 Antitrust |
| ❑ 130 Miller Act | ❑ 315 Airplane Product | Med. Malpractice | ❑ 625 Drug Related Seizure | 28 USC 157 | ❑ 430 Banks and Banking |
| ❑ 140 Negotiable Instrument | Liability | ❑ 365 Personal Injury - | of Property 21 USC 881 | | ❑ 450 Commerce |
| ❑ 150 Recovery of Overpayment | ❑ 320 Assault, Libel & | Product Liability | ❑ 630 Liquor Laws | **PROPERTY RIGHTS** | ❑ 460 Deportation |
| & Enforcement of Judgment | Slander | ❑ 368 Asbestos Personal | ❑ 640 R.R. & Truck | ❑ 820 Copyrights | ❑ 470 Racketeer Influenced and |
| ❑ 151 Medicare Act | ❑ 330 Federal Employers' | Injury Product | ❑ 650 Airline Regs. | ❑ 830 Patent | Corrupt Organizations |
| ❑ 152 Recovery of Defaulted | Liability | Liability | ❑ 660 Occupational | ❑ 840 Trademark | ❑ 480 Consumer Credit |
| Student Loans | ❑ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ❑ 490 Cable/Sat TV |
| (Excl. Veterans) | ❑ 345 Marine Product | ❑ 370 Other Fraud | ❑ 690 Other | | ❑ 810 Selective Service |
| ❑ 153 Recovery of Overpayment | Liability | ❑ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ❑ 850 Securities/Commodities/ |
| of Veteran's Benefits | ❑ 350 Motor Vehicle | ❑ 380 Other Personal | ❑ 710 Fair Labor Standards | ❑ 861 HIA (1395ff) | Exchange |
| ❑ 160 Stockholders' Suits | ❑ 355 Motor Vehicle | Property Damage | Act | ❑ 862 Black Lung (923) | ❑ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ❑ 385 Property Damage | ❑ 720 Labor/Mgmt. Relations | ❑ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ❑ 195 Contract Product Liability | ❑ 360 Other Personal | Product Liability | ❑ 730 Labor/Mgmt.Reporting | ❑ 864 SSID Title XVI | ❑ 890 Other Statutory Actions |
| ❑ 196 Franchise | Injury | | & Disclosure Act | ❑ 865 RSI (405(g)) | ❑ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❑ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ❑ 892 Economic Stabilization Act |
| ❑ 210 Land Condemnation | ❑ 441 Voting | ❑ 510 Motions to Vacate | ❑ 790 Other Labor Litigation | ❑ 870 Taxes (U.S. Plaintiff | ❑ 893 Environmental Matters |
| ❑ 220 Foreclosure | ❑ 442 Employment | Sentence | ❑ 791 Empl. Ret. Inc. | or Defendant) | ❑ 894 Energy Allocation Act |
| ❑ 230 Rent Lease & Ejectment | ❑ 443 Housing/ | Habeas Corpus: | Security Act | ❑ 871 IRS—Third Party | ❑ 895 Freedom of Information |
| ❑ 240 Torts to Land | Accommodations | ❑ 530 General | | 26 USC 7609 | Act |
| ❑ 245 Tort Product Liability | ❑ 444 Welfare | ❑ 535 Death Penalty | **IMMIGRATION** | | ❑ 900Appeal of Fee Determination |
| ❑ 290 All Other Real Property | ❑ 445 Amer. w/Disabilities - | ❑ 540 Mandamus & Other | ❑ 462 Naturalization Application | | Under Equal Access |
| | Employment | ❑ 550 Civil Rights | ❑ 463 Habeas Corpus - | | to Justice |
| | ❑ 446 Amer. w/Disabilities - | ❑ 555 Prison Condition | Alien Detainee | | ❑ 950 Constitutionality of |
| | Other | | ❑ 465 Other Immigration | | State Statutes |
| | ❑ 440 Other Civil Rights | | Actions | | |

## V.  ORIGIN   (Place an "X" in One Box Only)

☒ 1   Original Proceeding
❑ 2   Removed from State Court
❑ 3   Remanded from Appellate Court
❑ 4   Reinstated or Reopened
❑ 5   Transferred from another district (specify)
❑ 6   Multidistrict Litigation
❑ 7   Appeal to District Judge from Magistrate Judgment

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332
Brief description of cause:
Breach of contract, violation of PA UTPCPL due to fraudulent, unfair and abusive practices.

## VII.  REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**
Over $5,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☑ Yes   ❑ No

## VIII.  RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
07/01/2010

SIGNATURE OF ATTORNEY OF RECORD
_(signature)_

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Edward T. Esslinger, Gloria Glover, Ardath Roger, and all others similarly situated. | : | CIVIL ACTION |
| v. | : | |
| HSBC Bank, USA, Inc. and HSBC Card Services, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)  (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.  ( )

| | | |
|---|---|---|
| July 1, 2010 | Kenneth J. Grunfeld, Esquire | Plaintiffs |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 985-9177 | (215) 985-4169 | kgrunfeld@golombhonik.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: Edward Esslinger, 2100 Rhawn Street, Philadelphia, PA; Gloria Glover, 1313 North 10th Street, Philadelphia, PA; Ardath Rogers, 519 Mifflin Street, Phila, PA

Address of Defendant: 452 Fifth Avenue, New York, NY

Place of Accident, Incident or Transaction: Pennsylvania

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes ☐   No ☑

Does this case involve multidistrict litigation possibilities?     Yes ☐   No ☐

*RELATED CASE, IF ANY*:

Case Number: 2:10-cv-00823/2:10-cv-3092     Judge Schiller /Stengel     Date Terminated: N/A

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
     Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
     Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
     Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
     Yes ☐   No ☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases*:

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
     (Please specify)

B. *Diversity Jurisdiction Cases*:

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☑ All other Diversity Cases
     (Please specify)

## ARBITRATION CERTIFICATION

*(Check Appropriate Category)*

I, Kenneth J. Grunfeld, Esquire _____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: July 1, 2010     _____     84121

     Attorney-at-Law     Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: July 1, 2010     _____     84121

     Attorney-at-Law     Attorney I.D.#

CIV. 609 (6/08)

Ruben Honik, Esquire
Richard M. Golomb, Esquire
Kenneth J. Grunfeld, Esquire
**GOLOMB & HONIK, P.C.**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
(215) 985-9177

### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF PENNSYLVANIA

EDWARD T. ESSLINGER, GLORIA
GLOVER, ARDATH ROGERS and all
others similarly situated,

PLAINTIFFS

v.

HSBC BANK USA INC., and HSBC
CARD SERVICES, INC.                    CIVIL ACTION NO. _____

DEFENDANTS

### <u>Class Action Complaint</u>

Plaintiff EDWARD T. ESSLINGER, GLORIA GLOVER and ARDATH ROGERS,
individually and on behalf of all others similarly situated (the "Class"), bring this class action
against Defendants HSBC BANK USA INC and HSBC CARD SERVICES, INC. (collectively
referred to as "HSBC" or the "Company"). Plaintiffs seek certification of this matter as a class
action. Plaintiffs, by and through their attorneys, submit this Class Action Complaint (the
"Complaint") against the defendants named herein and allege as follows:

1

## NATURE OF THE ACTION

1.      This proposed or putative class action stems from the illicit activities undertaken by HSBC while marketing and selling products associated with their credit cards known as "Personal Account Protection," "Personal Account Protection Elite," "Account Benefits," "Account Secure Plus" and other monikers that all offer similar  coverage (hereinafter collectively referred to as "Payment Protection").

2.      Although HSBC's Payment Protection is indistinguishable from a contract of credit insurance, Payment Protection is not marketed or sold as insurance.  HSBC does not register Payment Protection with the Pennsylvania Department of Insurance, thereby avoiding state regulation.

3.      HSBC violated the law not only through the sale of a product that should be – but is not, due to its unlawful activities – subject to insurance regulations, but also by the deceptive and misleading manner in which it offers the Payment Protection plan to consumers, and the manner in which it administers claims for benefits by consumers.

4.      HSBC markets Payment Protection through direct mail and telemarketing.  It represents Payment Protection as a service that suspends or cancels the required minimum monthly payment due on the subscriber's credit card account and excuses the subscriber from paying the monthly interest charge and the Payment Protection plan fee for a limited period of time, preventing the account from becoming delinquent.  HSBC's marketing for this product claims that "[i]n good times and bad, we've got you covered."[1]

5.      Despite its simple explanation for marketing purposes, HSBC's Payment

---

[1]  http://www.personalaccountprotection.com/1/2/3/product_details_howitworks, last viewed on June 1, 2010.

Protection plan is a dense maze of limitations, exclusions and restrictions, making it impossible for customers to determine what Payment Protection covers and whether it is a sound financial choice.

6.      HSBC makes no effort to determine whether a subscriber is eligible for Payment Protection benefits at the time of sale. As a consequence, the Company bills thousands of retired persons (many of whom are senior citizens), along with the unemployed, self-employed, part-time or seasonal Pennsylvania residents, as well as disabled individuals, for Payment Protection coverage, even though their employment or health status prevents them from receiving benefits under the plan.

7.      Further, HSBC makes no effort to determine whether subscribers become ineligible for Payment Protection benefits after the plan is sold. Accordingly, when subscribers' employment or health statuses change, they will continue to pay for the product even though they may no longer be eligible for benefits under the plan.

8.      Upon information and belief, HSBC requires customers to enroll for Payment Protection coverage <u>before</u> it provides subscribers with the terms and conditions of the plan. It then allegedly offers a 30 day window within which a subscriber may affirmatively cancel the plan. By not adequately disclosing the terms of Payment Protection coverage to consumers <u>before</u> they buy the product, HSBC is violating – among other things – Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1 to -9.3.

9.      Days or weeks after the sale of Payment Protection, HSBC may in some instances mail written material to the subscriber. Given the confusing way the written materials present the terms and conditions of Payment Protection, it would be extremely difficult for a subscriber

to decipher those provisions.

10.     In fact, HSBC includes in its marketing campaign the following: "[w]hen you need this coverage, confusing paperwork is the last thing you need." Instead, it promotes the use of its online and phone services to file claims.

11.     However, HSBC has established its "customer service" support in such a way that subscribers cannot easily cancel the plan or receive answers to benefit questions.  It has established its "claim filing" system such that subscribers cannot easily file claims or receive benefits for filed claims.

12.     HSBC does not refund Payment Protection premiums even after it has denied subscribers claims for Payment Protection benefits, nor does it address subscribers' continued obligations to pay the monthly fee for Payment Protection after a claim has been denied.

13.     Payment Protection is so confusing as to when coverage is triggered, so restricted in terms of the benefits it provides to subscribers, and processing claims is made so difficult by HSBC, that the product is essentially worthless.

14.     HSBC knows that for those subscribers who choose to pay for Payment Protection, few will ever receive benefits under the plan and even for those that do, the amounts paid in "premiums" will usually exceed any benefits paid out.

15.     As a result of its misleading and deceptive marketing practices in connection with sales of Payment Protection, HSBC has increased its profits by many millions of dollars, all thanks to a product which provides no benefits to thousands of Pennsylvania residents who are nevertheless charged for the product month in and month out.

4

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this matter pursuant to the Class Action Fairness

Act, 28 U.S.C. § 1332(d) in that:

>       (a)  This is a class action involving 100 or more class members,

>       (b) Plaintiff, a citizen of the Commonwealth of Pennsylvania, is diverse in
>       citizenship from Defendants HSBC BANK USA INC. and HSBC CARD
>       SERVICES, INC. which are incorporated in Maryland and have principal places
>       of business in New York and Illinois, respectively.

17.     This case is properly maintainable as a class action pursuant to and in accordance

with Rule 23(a) of the Federal Rules of Civil Procedure in that:

- The class, which includes an unknown number of persons but certainly more than 100, is so numerous that joinder of all members is impractical;

- There are substantial questions of law and fact common to the class including those set forth in greater particularity in Paragraph 86 herein;

- This case is properly maintainable as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

>       a.      questions of law and fact enumerated below, which are all common of the
>               class, predominate over any questions of law or fact affecting only
>               individual members of the class;

>       b.      a class action is superior to any other type of action for the fair and
>               efficient adjudication of the controversy;

>       c.      the relief sought in this class action will effectively and efficiently provide
>               relief to all members of the class; and

>       d.      there are no unusual difficulties foreseen in the management of this class
>               action.

18.     The Court has personal jurisdiction over HSBC, which has at least minimum

contacts with the Commonwealth of Pennsylvania because it has conducted business there and

has availed itself of Pennsylvania's markets through its promotion, sales, and marketing efforts.

5

19.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

20.     This Court is a proper venue in which to bring this action, pursuant to 28 U.S.C. § 1391, inasmuch as a substantial part of the events or omissions giving rise to the claims occurred within the district in which this Court sits.

## PARTIES

21.     Plaintiff EDWARD T. ESSLINGER ("Mr. Esslinger") resides at 2100 Rhawn Street in Philadelphia, Pennsylvania.  Since 2009, Mr. Esslinger has had one credit card in his name from HSBC bearing Payment Protection features.

22.     Plaintiff GLORIA GLOVER ("Ms. Glover") resides at 1313 North 10th Street in Philadelphia, Pennsylvania.  Since 2007, Ms. Glover has had one credit card in her name from HSBC bearing Payment Protection features.

23.     Plaintiff ARDATH ROGERS ("Ms. Rogers") resides at 519 Mifflin Street in Philadelphia, Pennsylvania.   Since 2009, Ms. Rogers has had one HSBC Direct Rewards Platinum credit card in her name from HSBC bearing Payment Protection features.

24.     Defendant HSBC BANK USA INC. is an indirect wholly owned subsidiary of HSBC HOLDINGS PLC.[2]   HSBC BANK USA INC. is a Maryland company with a principal place of business in New York City, New York.

25.     Defendant HSBC CARD SERVICES, INC. is the U.S. consumer credit card segment of HSBC.  HSBC CARD SERVICES, INC., is a Maryland company with a principal

---

[2] HSBC HOLDINGS PLC is not a defendant in this lawsuit.  HSBC HOLDINGS PLC is a public, limited liability international holding company incorporated in England and Wales with a principal place of business in London, England.

place of business in Illinois.

26.     HSBC markets itself as "the world's local bank." HSBC serves over 100 million personal customers and over three million commercial customers across its Customer Groups and Global Businesses. It has around 8,000 offices in 88 countries and territories. Shares in HSBC Holdings PLC are held by over 220,000 shareholders in 119 countries and territories.[3]

## FACTUAL ALLEGATIONS

27.     Payment Protection is self-described by HSBC as a non-insurance product. HSBC has not registered or identified Payment Protection as an insurance product with the Pennsylvania Department of Insurance or other appropriate authorities.

28.     However, upon information and belief, prior to developing and marketing Payment Protection, HSBC did sell credit insurance products, which it registered with appropriate state authorities. HSBC's credit insurance products offered substantially the same type of coverage as what is offered today as Payment Protection.[4]

29.     Even though HSBC's previously-offered credit insurance products were nearly indistinguishable from what is now offered as Payment Protection, HSBC does not designate Payment Protection an "insurance product" so it can avoid state regulation and charge higher fees for the product.

30.     Upon information and belief, HSBC offers Payment Protection to all its credit card customers, but aggressively markets this product to vulnerable Pennsylvania consumers who fall into the subprime credit category, or customers who have low credit limits because of

---

[3] *See* http://www.hsbc.com/1/2/investor-relations/overview/fast-facts, last viewed on June 1, 2010.

[4] Upon information and belief, the same or a similar product as HSBC's Payment Protection plan is marketed and sold in other countries, including the UK and Canada, but is still referred to as "insurance" and subject to rules and regulations applicable to other forms of insurance.

impaired credit ratings.   Specifically, HSBC's Orchard Bank unit issues cards to consumers looking to establish or re-establish their credit.

31.     HSBC markets Payment Protection as a service that will safeguard subscribers' credit card accounts by temporarily suspending the required minimum monthly credit card payments due in certain highly restricted circumstances, or permanently canceling accounts in other circumstances.   In such circumstances, the subscribers are also not required to pay the monthly interest charges or the Payment Protection plan fee for the month in question.

32.     HSBC sells Payment Protection to consumers through a number of different channels, including direct mail marketing, in which it may ask that consumers "check the box" to initiate the plan, through telemarketing, where consumers may be asked to press a button on the telephone to approve initiation of the plan, or through unilaterally imposing the Payment Protection feature on consumers' credit cards.

33.     HSBC effectively shifts its burden and duty of full disclosure prior to the sale to the customer and requires subscribers to decipher the terms of the product <u>after it has already been purchased</u> and take action to cancel it.   It characterizes this sales scheme as providing "Satisfaction Guaranteed; A full refund will be provided if you call to cancel within 30 days from your enrollment date."[5]   In fact, the obligation to cancel is affirmative, such that once enrollment is triggered, subscribers are billed for Payment Protection continuously unless some affirmative step is taken to cancel the plan.

34.     Subscribers may later be provided with written materials from HSBC, including a "congratulations" letter and a brochure.   The materials include an Election and Acknowledgement Form for the subscribers' signatures.   However, the form states the

---

[5] http://www.personalaccountprotection.com/1/2/, last viewed on June 1, 2010.

"[r]egardless of whether you send this form back to us, you are enrolled in [the plan]."

35.     It is virtually impossible for the subscriber to determine all of the exclusions and limitations of Payment Protection, or the value of the product, based on what is provided.

36.     Upon information and belief, HSBC imposed charges for "Payment Protection" upon Pennsylvania consumers even though individual consumers did not request the product or clearly assent to pay for the product in writing after getting the opportunity to review its governing terms.

37.     In some instances, Payment Protection has been unilaterally imposed upon consumers. In other instances, no written materials explaining the terms and conditions were ever provided to subscribers. If Payment Protection is imposed and no written materials are provided, the only way subscribers could ever know they have been enrolled in Payment Protection and are being charged for this product is from noticing a line item fee listed on their monthly credit card statements.

38.     The terms of HSBC's Payment Protection scheme are varied, complicated and always changing. However, all of the various plans provided for some form of payment suspension upon the occurrence of the following events, as it defines the terms: *Unemployment* and *Leave of Absence.*

39.     Payment Protection also provides suspension for *Temporary* or *Permanent Disability*.

40.     Payment Protection also provides suspension for a limited period of time upon the occurrence of a *Life Event*, including marriage, child birth, adoption, college, a home move, and other closely defined events.

9

41.     Finally, Payment Protection provides cancellation in the event of *Loss of Life*.

42.     The restrictions, limitations and exclusions associated with these events that trigger Payment Protection are expansive and constantly evolving.

43.     The telephone marketing scripts and the written materials provided by HSBC are incomplete, indecipherable, misleading and obfuscatory.

44.     As an example of the misleading and obfuscatory language is HSBC's failure to disclose that Payment Protection is actually akin to an insurance product. Despite this fact, HSBC's marketing materials carefully avoid any use of the word "insurance." The materials refer to "claims," which indicates that HSBC internally regards this as an insurance product. The fees paid for Payment Protection by consumers are actually premiums.

45.     According to the written materials which are only provided <u>after</u> the subscriber has already been enrolled in the plan, the following restrictions on Payment Protection are imposed, but because they are in small print and in incomplete, indecipherable, misleading and obfuscatory language, are not readily comprehensible to consumers:

    a.    Payment Protection does not apply to persons self-employed or not employed;

    b.    Payment Protection does not apply to persons employed part time or seasonally;

    c.    Payment Protection does not apply to retired persons;

    d.    Payment Protection does not apply for the first 30 days of unemployment or disability;

    e.    Payment Protection does not apply unless you initially qualify for state unemployment benefits or have received an employer severance agreement;

    f.    Payment Protection is limited to 9 months for "unemployment" and 18 months for "temporary disability;"

g.    Payment Protection does not apply unless you notify the company within 180 days of the Event and provide Verification within 90 days of notification.

h.    Subscribers can not use their credit card for new purchases while Payment Protection benefits are being provided;

i.    Payment Protection coverage is limited to one benefit approval per calendar year; and

j.    Payment Protection requires monthly certification by a physician for the duration of the injury or illness.

46.    Upon information and belief, HSBC is in possession of information, such as date of birth and name of last employer, which would assist it in knowing whether a particular cardholder is eligible for Payment Protection.

47.    However, HSBC makes no reasonable efforts and undertakes no investigation, including review of information in its possession regarding the cardholder, to determine if Payment Protection coverage would apply to the cardholder. Accordingly, HSBC engages in marketing to enroll individuals in Payment Protection even when it has information in its possession indicating that the product may have limited or no value to the consumer.

48.    HSBC acknowledges that some subscribers are *per se* ineligible to receive Payment Protection benefits:

> There are eligibility requirements, conditions and exclusions that could prevent you from receiving benefits under [the plan]. You should read the terms and conditions for a full explanation of [the plan].[6]

Nevertheless, HSBC still sells these products to its customers.

49.    For instance, Pennsylvania retired persons, many of whom are senior citizens, are charged for this product even though they are categorically excluded from receiving most or all

---

[6] http://www.personalaccountprotection.com/1/2/, last viewed on June 1, 2010.

of the benefits under the plan.  In fact, HSBC does not even ask customers whether they are retired.

50.    Similarly, the benefits offered to self-employed persons are limited, but HSBC nevertheless fails to affirmatively inform self-employed persons of the limitations in benefits when they are enrolled.  In fact, HSBC does not even ask customers whether they are self-employed.

51.    Further, part-time or seasonal workers are also limited or categorically excluded from receiving benefits.  To qualify for benefits, one needs to work at least 30 hours a week in employment considered to be permanent.  However, HSBC makes no effort to investigate whether any of the Pennsylvania consumers that pay for Payment Protection are part-time or seasonal.  These terms are not adequately communicated or defined in any HSBC materials.

52.    Finally, benefits are unavailable or limited for disabled persons, but HSBC nevertheless fails to affirmatively inform these individuals of the limitations in benefits when they are enrolled.  In fact, HSBC does not even ask customers whether they are disabled.

53.    The cost of Payment Protection is a monthly charge of $1.35 per $100 of a subscriber's month-ending credit card balance. [7]

54.    For example, if a HSBC credit card customer has a balance on a covered account of $10,000, as a Payment Protection subscriber, the customer owes HSBC $135.00 that month just for Payment Protection coverage.

55.    Payment Protection also provides the added benefit to HSBC of lowering available credit to its subscribers through the imposition of this additional fee.  Further, the imposition of the fee creates a cycle of profitability for HSBC, in that the fee itself increases

---

[7] This is the cost for the "Personal Account Protection Elite" Payment Protection plan.

12

subscribers' monthly credit balances, which in turn increases Payment Protection fees in upcoming months.

56.     "Customer service" is available for HSBC's Payment Protection subscribers.   To access customer service, subscribers can call a toll free number or send mail to a P.O. Box in Bridgewater, New Jersey.   According to HSBC marketing, "[w]hen you need this coverage, confusing paperwork is the last thing you need."

57.     Upon information and belief, employees at HSBC's Payment Protection call center are trained to assist subscribers with all questions, including inquiries concerning canceling memberships, plan benefits and filing claims.

58.     HSBC has established its customer service system in such a way that it is difficult for subscribers to cancel Payment Protection, to get detailed information about claim benefits or restrictions, or to file claims.

59.     For example, upon information and belief, employees at HSBC's call center are given authority to deny claims immediately over the phone, but do not have authority to approve claimants to receive benefits in the same manner.

60.     Further, when claims for Payment Protection benefits are denied, HSBC has not implemented a process through which subscribers' Payment Protection premiums are refunded, even if the subscribers are deemed to be *per se* ineligible for Payment Protection benefits.   In fact, if subscribers are denied Payment Protection benefits, HSBC neither affirmatively removes subscribers from Payment Protection enrollment going forward, nor is it HSBC's policy to inform subscribers of their continued obligations pay for Payment Protection even though they have been deemed to be ineligible for benefits.

61.     Payment Protection is a profit center for HSBC and serves the Company's interest in generating fee income, to the detriment of its most vulnerable customers.

62.     Although heralded as coverage designed for a subscriber's peace of mind and for use when times get tough, the Payment Protection device is designed to prey on the financially insecure and is virtually worthless because of the numerous restrictions that are imposed, because of the exclusions of benefits, and because of the administrative and bureaucratic hurdles that are placed in the way of Pennsylvania subscribers who attempt to secure payments from HSBC under Payment Protection coverage.

### FACTUAL ALLEGATIONS AS TO EDWARD T. ESSLINGER

63.     Mr. Esslinger is a sixty-three year old Pennsylvania resident.

64.     In approximately 2006, Mr. Esslinger became a HSBC credit card holder.   In 2009, he received unsolicited advertisements through direct mailers promoting HSBC's Payment Protection plan designed specifically for Union Members. Since Mr. Esslinger is and has been a Teamster's Union Member throughout his career, he signed up for HSBC's Payment Protection services believing they endorsed this program.[8]

65.     Mr. Esslinger became disabled as a result of a motor vehicle accident approximately ten (10) years ago. He is retired and has been receiving Social Security Disability Benefits for approximately the last seven (7) years. At the time he enrolled in HSBC's Payment Protection, he was retired and disabled. However, no one from HSBC ever asked Mr. Esslinger about his employment or disability status before enrolling him in Payment Protection.

66.     Shortly after signing up for Payment Protection, Mr. Esslinger realized that

---

[8] Mr. Esslinger later checked with members of the Teamsters Union who informed him that it is not involved with HSBC's Payment Protection plan in any way.

because he is retired and disabled, he is ineligible to receive benefits from Payment Protection. When he called to cancel Payment Protection, he was informed by an HSBC customer service representative that Payment Protection was mandatory and his enrollment could not be cancelled.

67.     Later in 2009, Mr. Esslinger tried to close his credit card account.  He was told that he could not close his account until it had reached a $0 balance, but HSBC would list his account as "designated closed."

68.     Meanwhile, at or around this time, Mr. Esslinger called Payment Protection customer service for a second time and asked to cancel Payment Protection.  He was informed by customer service for a second time that Payment Protection was mandatory and could not be cancelled.

69.     Ever since his account has been "designated closed," Mr Essinger has not used his HSBC credit card for new purchases.  Nevertheless, HSBC continues to charge Mr. Esslinger for Payment Protection, and Mr. Esslinger continues to pay for Payment Protection, every month. Mr. Esslinger continues to pay for Payment Protection, a service he neither wants nor is eligible to receive benefits under.

## FACTUAL ALLEGATIONS AS TO GLORIA GLOVER

70.     Ms. Glover is a 68 year old Pennsylvania resident residing at 1313 North 10th Street in Philadelphia, Pennsylvania, 19122.

71.     In 2007, Ms. Glover became a HSBC credit card holder.  Several months after becoming a card member, she became enrolled in HSBC's Payment Protection plan.

72.     At the time of enrollment, Ms. Glover was retired and receiving Social Security Income.  No one from HSBC ever asked Ms. Glover about her employment status before

15

enrolling her in Payment Protection.

73.     Ms. Glover is still enrolled in HSBC's Payment Protection plan.  Her credit card account is charged a fee every month for Payment Protection, even though she is virtually ineligible for Payment Protection benefits.

## FACTUAL ALLEGATIONS AS TO ARDETH ROGERS

74.     Ms. Rogers is a 75 year old Pennsylvania resident who resides at 519 Mifflin Street in Philadelphia, Pennsylvania, 19148.

75.     On or around July 23, 2009, Ms. Rogers became a HSBC Direct Rewards Platinum credit card holder.  On or around July 22, 2009, Ms. Rogers became enrolled in HSBC's Payment Protection plan.

76.     At the time of enrollment in the Payment Protection plan, Ms. Rogers was working approximately 12 hours a week and receiving Social Security Income.  HSBC never inquired into her employment status prior to enrolling her in the Payment Protection plan.

77.     Ms. Rogers is still enrolled in HSBC's Payment Protection plan.  Her credit card account is charged a fee every month for Payment Protection, even though she is virtually ineligible for Payment Protection benefits.

## CLASS ACTION ALLEGATIONS

78.     Plaintiffs brings this action on their own behalf and on behalf of a class of all other persons similarly situated (the "Class"), pursuant to Rule 23 of the Federal Rules of Civil Procedure.

79.     Plaintiffs bring this action as class representatives to recover damages and/or refunds from HSBC for consumer fraud as expressly defined in Pennsylvania's Unfair Trade

Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1 to -9.3, injunctive relief and

declaratory judgment, and unjust enrichment.

80.     This action satisfies the numerosity, commonality, typicality, adequacy,

predominance, and superiority requirements of the Federal Rules of Civil Procedure Rule 23(a)

and (b).

81.     Plaintiffs seek certification of a class comprised of the following Pennsylvania

citizens and consumers:

> All residents of the Commonwealth of Pennsylvania who (1) were solicited by
> HSBC to purchase Payment Protection; and (2) paid for Payment Protection
> ("Payment Protection Subscribers") at all times the product was sold.

82.     Plaintiffs seek certification of the following subset class comprised of the

following Pennsylvania citizens and consumers:

> All residents of the Commonwealth of Pennsylvania who were not eligible for full
> benefits, or whose eligibility for benefits were limited by express exclusions,
> including but not limited to those Payment Protection subscribers who were
> retired, self-employed or part time or seasonal workers, or were disabled, either at
> the time that they were solicited for and made payments to HSBC for Payment
> Protection, or any time thereafter while continuing to pay for Payment Protection.

83.     Plaintiffs reserve the right to modify or amend the definition of the proposed

Class before the Court determines whether certification is appropriate.

84.     Excluded from the Class are:

  a.   Defendants and any entities in which Defendants have a controlling
       interest;

  b.   Any entities in which Defendants' officers, directors, or employees are
       employed and any of the legal representatives, heirs, successors or assigns
       of Defendants;

  c.   The Judge to whom this case is assigned and any member of the Judge's
       immediate family and any other judicial officer assigned to this case;

17

d.      Persons or entities with claims for personal injury, wrongful death and/or emotional distress;

e.      All persons or entities that properly execute and timely file a request for exclusion from the Class;

f.      Any attorneys representing the Plaintiff or the Class; and

g.      All governmental entities.

85.     <u>Numerosity – Fed. R. Civ. P. 23(a)(1)</u>. The Class is comprised of over 100 people and possibly hundreds of thousands of individuals who were HSBC customers, the joinder of which in one action would be impracticable. The exact number or identification of the Class members is presently unknown. The identity of the Class members is ascertainable. In addition to rolls maintained by the Defendants and its agents, the Class members may be located and informed of the pendency of this action by a combination of electronic bulletins, e-mail, direct mail and public notice, or other means. The disposition of the claims of the proposed class members through this class action will benefit both the parties and the Court.

86.     <u>Predominance of Common Questions – Fed. R. Civ. P. 23(a)(2), 23(b)(3)</u>. There is a well-defined community of interest in the questions of law and fact involved affecting members of the Class. The questions of law and fact common to the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

a)      Whether HSBC's sales, billing, and marketing scheme as alleged in this Complaint is fraudulent, deceptive, unlawful, and/or unfair in violation of Pennsylvania law;

b)      Whether HSBC's common and uniform sales, billing, and marketing schemes related to Payment Protection insurance as alleged in this Complaint constitutes a deceptive trade practice as under Pennsylvania law;

c)      Whether Plaintiffs and the Class members are entitled to restitution of all

18

amounts acquired by HSBC's through its common and uniform scheme;

d)      Whether Plaintiffs and the Class members are entitled to injunctive relief requiring the disgorgement of all wrongfully collected fees by HSBC;

e)      Whether Plaintiffs and the Class members are entitled to prospective injunctive relief enjoining HSBC from continuing to engage in the fraudulent, deceitful, unlawful, and unfair common scheme as alleged in this Complaint; and

f)      Whether Plaintiffs and the Class members are entitled to recover compensatory and punitive damages as a result of HSBC's wrongful scheme.

87.      Typicality – Fed. R. Civ. P. 23(a)(3).  Plaintiffs assert claims that are typical of the entire Class, having all been targeted by HSBC as consumers who were improperly assessed charges for Payment Protection, and having paid for this product.  Plaintiffs and the Class members have similarly suffered harm arising from HSBC's violations of the law as alleged in this Complaint.

88.      Adequacy – Fed. R. Civ. P. 23(a)(4); 23(g)(1).  Plaintiffs are adequate representatives of the Class because they fit within the class definition and their interests do not conflict with the interests of the Members of the Class they seeks to represent.  Plaintiffs are passionate about this litigation personally and will prosecute this action vigorously for the benefit of the entire Class.  Plaintiffs are represented by experienced and able attorneys from coordinated law firms that will collectively and jointly serve as class counsel.  Class counsel has litigated numerous class actions, and Plaintiffs' counsel intends to prosecute this action vigorously for the benefit of the entire Class.  Plaintiffs and class counsel can fairly and adequately protect the interests of all of the Members of the Class.

89.      Superiority – Fed. R. Civ. P. 23(b)(3).  The class action is the best available

method for the efficient adjudication of this litigation because individual litigation of Class

Members' claims would be impracticable and individual litigation would be unduly burdensome

to the courts. Plaintiffs and members of the Class have suffered irreparable harm as a result of

HSBC's fraudulent, deceitful, unlawful, and unfair conduct. Because of the size of the

individual Class members' claims, no Class members could afford to seek legal redress for the

wrongs identified in this Complaint. Without the class action vehicle, the Class would have no

reasonable remedy and would continue to suffer losses, as HSBC continues to engage in the

unlawful, unfair, and unconscionable conduct that is the subject of this Complaint, and HSBC

would be permitted to retain the proceeds of their violations of law. Further, individual litigation

has the potential to result in inconsistent or contradictory judgments. A class action in this case

presents fewer management problems and provides the benefits of single adjudication,

economies of scale, and comprehensive supervision by a single court.

## COUNT ONE - BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING[9]

90.      Plaintiffs restate and re-allege the preceding paragraphs of the Complaint as

though set out here word for word.

91.      Upon information and belief, Plaintiffs and HSBC contracted for Payment

Protection benefits.

92.      Upon information and belief, the terms and conditions of this agreement are

embodied in written materials in the possession of HSBC.

93.      In Pennsylvania, a covenant of good faith and fair dealing is implied in every

contract. Pennsylvania has adopted the concepts of general duties of good faith and fair dealing

---

[9] Pennsylvania treats the breach of the covenant of good faith and fair dealing as a species of a breach of contract claim. Accordingly, Plaintiffs plead these claims together, in a single count.

in the performance of a contract as advanced in the Restatement (Second) of Contracts § 205.

94.     Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing.   Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.   Put differently, parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

95.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.   Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.   Examples of bad faith are evasion of the spirit of the bargain; willful rendering of imperfect performance; abuse of a power to specify terms; and interference with or failure to cooperate in the other party's performance.

96.     HSBC has breached the covenant of good faith and fair dealing inherent in the Payment Protection agreement.

97.     Plaintiffs and the Class have performed all, or substantially all, of the obligations imposed on them in the Payment Protection agreement.

98.     Plaintiffs and members of the Class have sustained damages as a result of HSBC's breach of the covenant of good faith and fair dealing.

## COUNT TWO – UNCONSCIONABILITY

99.     Plaintiffs restate and re-allege the preceding paragraphs of the Complaint as though set out here word for word.

100.     HSBC's Payment Protection policies and practices are substantively and procedurally unconscionable in the following material respects, among others:

a.      HSBC unilaterally imposes Payment Protection upon its customers' credit card accounts, thereby failing to disclose to customers that Payment Protection is an optional plan and that they have the option to "opt out" of Payment Protection;

b.      HSBC did not obtain affirmative consent from subscribers prior to enrolling them in Payment Protection;

c.      HSBC does not provide the terms and conditions of Payment Protection to subscribers until *after* they have enrolled in the plan;

d.      The written documents that CITI does eventually provide to subscribers, referred to by CITI as a Welcome Kit, does not provide subscribers with sufficient information to understand the terms and conditions of Payment Protection;

e.      The "congratulations" letter and brochure, along with other written materials in the possession of HSBC, are contracts of adhesion in that they are standardized forms, imposed and drafted by HSBC, which is a party of vastly superior bargaining strength, and only relegates to the subscriber the opportunity to adhere to them or reject the agreement in its entirety;

f.      These documents provided to customers are ineffective, ambiguous, deceptive, unfair, and misleading in that they do not require affirmative customer consent (like a signature) and do not unambiguously state that certain customers are *per se* ineligible to receive benefits, even though HSBC had the information and means of determining eligibility prior to enrolling these customers in Payment Protection;

g.      HSBC does not alert customers that certain individuals are *per se* ineligible for Payment Protection benefits, including but not limited to retired, unemployed, self-employed, persons employed on a part-time or seasonal basis and those that are disabled.

h.      The amount charged in fees for Payment Protection is not rationally related to the amount of value Payment Protection provides to subscribers,

22

nor is the value of Payment Protection computable or discernable by subscribers;

i.    HSBC charges exorbitant fees for Payment Protection, much more than the value of the benefits offered or paid out to subscribers, and is able to do so because HSBC does not identify Payment Protection as an insurance product, which would require it to provide fees and claims-paid data to state authorities for review and regulation;

j.    The formula HSBC uses to compute Payment Protection fees is misleading such that subscribers are unable to budget for this product or understand its overall cost in order to determine its value to subscribers; and

k.    HSBC operates its customer service centers in such a way as to make it difficult for subscribers to cancel enrollment, obtain information about the terms and conditions of Payment Protection coverage, and file claims, in order for HSBC to maximize the number of Payment Protection subscribers and minimize the amount of benefits it pays to these subscribers.

101.    Considering the great business acumen and experience of HSBC in relation to Plaintiffs and the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

102.    The imposition of Payment Protection fees which excessively exceed the amount of claims-paid by a rate higher than any insurance product would be permitted to charge for premiums is itself unconscionable. Such fees are not reasonably related to HSBC's costs of administering the plan and providing the benefits offered.

103.    Plaintiffs and members of the Class have sustained damages as a result of HSBC's unconscionable policies and practices as alleged herein.

## COUNT THREE – VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (73 Pa. Stat. Ann. §§ 201-1 to -9.3)

104.    Plaintiffs restate and re-allege the preceding paragraphs of the Complaint as though set out here word for word.

105.    HSBC's Payment Protection plan constitutes a "good[]" or "service[]" under the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

106.    Plaintiffs are "persons," as defined in 73 Pa. Stat. Ann. § 201-2(2), who have purchased Payment Protection coverage primarily, if not exclusively, for personal, family, or household purposes.

107.    Each Defendant is a "person" as defined in 73 Pa. Stat. Ann. § 201-2(2).

108.    Through its conduct, as described in preceding paragraphs of this Complaint, HSBC has engaged in the use or employment of a method, act, or practice declared unlawful by the Pennsylvania Unfair Trade Practices and Consumer Protection Law.   In particular, and among other things, HSBC has participated in "fraudulent [and] deceptive conduct which creates a likelihood of confusion [and] of misunderstanding." 73 Pa. Stat. Ann. § 201-2(4)(xxi).

109.    As a result of HSBC's activities which offend Pennsylvania's Unfair Trade Practices and Consumer Protection Law, Plaintiffs have suffered an ascertainable loss of money and property.   Specifically, Plaintiffs have become responsible for the payments attributable to Payment Protection coverage, even though that service is virtually worthless to them.

110.    Plaintiffs seek judicial orders of an equitable nature against HSBC, including, but not limited to, orders declaring HSBC's practices to be unlawful, unfair, unconscionable and/or deceptive, and enjoining HSBC from undertaking any further unlawful, unfair, unconscionable,

24

and/or deceptive acts or omissions.

111.   Plaintiffs and the Class seek disgorgement and restitution plus interest on damages at the legal rate, as well as three times the amount of their damages caused by HSBC's violations of the Unfair Trade Practices and Consumer Protection Law. *See* 73 Pa. Stat. Ann. § 201-9.2(a) (providing that a "court may, in its discretion, award up to three times the actual damages sustained . . . and may provide such additional relief as it deems necessary or proper").

112.   Because Plaintiffs seek to enforce an important right affecting the public interest, Plaintiffs request an award of attorneys' fees and costs on behalf of themselves and the Class.

113.   Due to HSBC's violations of the Unfair Trade Practices and Consumer Protection Law prohibiting unfair and deceptive acts and practices, Plaintiffs and members of the Class have suffered monetary damages for which HSBC is liable.

### COUNT FOUR – INJUNCTIVE RELIEF
### PAYMENT PROTECTION RESTITUTION

114.   Plaintiffs restate and re-allege the preceding paragraphs of this Complaint as though set out here word for word.

115.   Plaintiffs ask the Court to grant the remedy of restitution to themselves and to all members of the Class who made payments to HSBC for Payment Protection. The Plaintiffs ask the Court to grant the following relief:

a)   a refund of all Payment Protection payments made to HSBC;

b)   a refund to any consumers who were retired at the time they were sold Payment Protection by HSBC or at any time they paid for Payment Protection;

c)   a refund to any consumers who were ineligible for benefits, or who faced additional restrictions to receive benefits as a result of their health or employment status, at the time they were sold Payment Protection by HSBC or at any time they paid for Payment Protection;

    d)     a refund to consumers who were otherwise not eligible for Payment Protection benefits at any time they paid for Payment Protection; and/or

    e)     a refund of all amounts HSBC assessed for Payment Protection that were in excess of sums which would have been permissible had HSBC correctly identified the service as insurance.

116.    Plaintiffs seek injunctive relief enjoining HSBC from continuing to engage in the fraudulent, deceitful, unlawful, and unfair common scheme described in this Complaint.

## COUNT FIVE – DECLARATORY RELIEF

117.    Plaintiffs restate and re-allege the preceding paragraphs of this Complaint as though set out here word for word.

118.    Plaintiffs seek a Declaratory Judgment finding that the conduct of HSBC is in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and enjoining it from continuing in such conduct.

## COUNT SIX – UNJUST ENRICHMENT

119.    Plaintiffs restate and re-allege the preceding paragraphs of this Complaint as though set out here word for word.

120.    In seeking to sell credit cards to Plaintiffs and members of the putative Class, HSBC withheld material terms from consumers prior to activation of Payment Protection charges, including the express benefits, limitations, restrictions, and exclusions associated with the product.

121.    HSBC was unjustly enriched by charging Plaintiffs and the Class sums for Payment Protection coverage that were in excess of amounts which would have been permissible had HSBC properly identified the service as insurance.

122.   HSBC was unjustly enriched by the practice of signing people up for Payment Protection that never agreed to be plan members.

123.   HSBC was unjustly enriched by the practice of withholding material terms of Payment Protection until after the product was charged to consumers' credit cards.

124.   HSBC was unjustly enriched by their business practice of making it so impermissibly difficult for consumers to actually receive coverage under Payment Protection that the service was virtually worthless.  Such unconscionable acts include, but are not limited to:

a)   Denying claims over the phone without written explanation;

b)   Denying claims without sufficient investigation;

c)   Requiring claimants to submit excessive and duplicate documentation, and/or;

d)   Establishing a telephone number that does not allow for claimants to speak to a live person, a person in a timely manner, or a person that is properly trained to handle Payment Protection claims, order for the subscriber to successfully file a claim.

125.   HSBC was unjustly enriched by charging Plaintiffs and the Class members for illusory benefits.

126.   HSBC was unjustly enriched by charging Plaintiffs and the Class members who were retired or were otherwise not eligible to receive payments by the terms of the Payment Protection plan.

127.   As a result of HSBC's actions which constitute unjust enrichment, Plaintiffs and Class members suffered actual damages for which HSBC is liable.  HSBC's liability for those damages should be measured by the extent of its unjust enrichment.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray:

      A.    That the Court determines that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure.  The Plaintiffs are proper class representatives and the best practicable notice of this action is to be provided to members of the Class represented by the Plaintiffs;

      B.    That judgment be entered against HSBC and in favor of Plaintiffs and the Class on the Causes of Action in this Complaint, for injunctive relief as requested above, and for actual, compensatory, punitive, and treble damages in an amount to be determined at trial;

      C.    That judgment be entered imposing interest on damages, litigation costs, and attorneys' fees against HSBC;

      D.    For all other and further relief as this Court may deem necessary and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury consisting of twelve persons on all issues so triable.

### GOLOMB & HONIK, P.C.

BY:    /s/ KJG2445
Ruben Honik, Esquire
Richard M. Golomb, Esquire
Kenneth J. Grunfeld, Esquire
1515 Market Street, Suite 1100
Philadelphia, PA 19102
(215) 985-9177

Curtis L. Bowman, Esq.
Marcus N. Bozeman, Esq.
Randall K. Pulliam, Esq.
11311 Arcade Drive, Suite 200
Little Rock, Arkansas 72212
CARNEY WILLIAMS BATES
BOZEMAN & PULLIAM, PLLC
Tel: (501) 312-8500
Fax: (501) 312-8505

29