# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD T. ESSLINGER, GLORIA GLOVER, ARDATH ROGERS and all others similarly situated, | : | |
| | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION NO: 2:10-cv-03213-BMS |
| v. | : | |
| | : | |
| HSBC BANK NEVADA, N.A. and HSBC CARD SERVICES, INC. | : | |
| | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFFS' MOTION FOR PRELIMINARY
## APPROVAL OF CLASS ACTION SETTLEMENT AND
## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION</u>

## TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................... 1

II.    OVERVIEW OF THE LITIGATION ..................................................................... 2

III.   THE PROPOSED SETTLEMENT ......................................................................... 6

IV.    LEGAL ARGUMENT ............................................................................................ 9

    A.    Applicable Legal Standards for Preliminary Approval ................................ 9

    B.    The Proposed Settlement Warrants Preliminary Approval ......................... 11

        1.    The Settlement was Reached Through Arm's Length Negotiations and Falls Within the Range of Possible Approval .............................................. 12

        2.    The Settlement was Reached Based on a Well Developed Factual Record ....... 14

        3.    Counsel are Experienced in Similar Litigation .................................... 16

    C.    Conditional Certification of the Settlement Class is Appropriate ............... 17

        1.    The Class is Sufficiently Numerous ..................................................... 19

        2.    Common Questions of Law or Fact Exist .............................................. 20

        3.    The Representative Plaintiffs' Claims are Typical of  Those of the Class ......... 22

        4.    The Proposed Class Representatives and their Counsel Will Adequately Protect the Interests of the Class and Class Counsel Should beAppointed as Requested ................................................. 23

        5.    The Requirements of Rule 23(b) are Satisfied .................................... 25

    D.    The Proposed Notice Program is Adequate .................................................. 27

    E.    Scheduling a Final Approval Hearing is Appropriate .................................. 31

V.     CONCLUSION ...................................................................................................... 31

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

### <u>CASES</u>

*Amchem Prods., Inc. v. Windsor,*
     521 U.S. 591 (1997) ........................................................................................ 26

*Argo v. Harris,*
     84 F.R.D. 646 (E.D.N.Y. 1979) ...................................................................... 14

*Armstrong v. Board of Sch. Dirs.,*
     616 F.2d 305 (7th Cir. 1980) .......................................................................... 11

*Bellows v. NCO Fin. Sys.,*
     Case No. 3:07-cv-01413-W-AJB, 2008 U.S Dist. LEXIS 114451,
     (S.D. Cal. Sept. 5, 2008) ................................................................................. 27

*Brink v. First Credit Res.,*
     185 F.R.D. 567 (D. Ariz. 1999) ...................................................................... 22

*Cullen v. Whitman Med. Corp.,*
     197 F.R.D. 136 (E.D. Pa. 2000) ........................................................................ 9

*Curiale v. Lenox Group, Inc.,*
     2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) ................................................. 12

*Curiale v. Lenox Group, Inc.,*
     Civ. A. 07-1432, 2008 WL 4899474, (E.D. Pa. Nov. 14, 2008) .................... 10

*Date v. Sony Elecs., Inc.,*
     Case No. 2:07-cv-15474 PDB RSW, 2008 U.S. Dist. LEXIS 56458,
     (E.D. Mich. July 25, 2008) ............................................................................. 15

*DeBoer v. Mellon Mortgage Co.,*
     64 F.3d 1171 (8th Cir. 1995) .......................................................................... 23

*Ehrheart v. Verizon Wireless,*
     609 F.3d 590 (3d Cir. Pa. 2010) ................................................................ *passim*

*Eisen v. Carlisle & Jacquelin,*
     417 U.S. 156 (1974) ........................................................................................ 28

*Eisenberg v. Gagnon,*
     766 F.2d 770 (3d Cir. 1985) ...................................................................... 22, 26

*Felzen v. Andreas,*
     134 F.3d 873 (7th Cir. 1998) .......................................................................... 11

*Finn v. FMC Corporation,*
     528 F.2d 1169 (4th Cir. 1975) ........................................................................ 14

*Gates v. Rohm & Haas Co.,*
     248 F.R.D. 434 (E.D.Pa. 2008) .............................................................. 10, 11, 12

*Grant v. Sullivan,*
  131 F.R.D. 436 (M.D. Pa. 1990) ................................................................................. 19

*Hall v. AT & T Mobility LLC*
  2010 WL 4053547 (D.N.J. 2007) ............................................................................... 13

*Hassine v. Jeffes,*
  846 F.2d 169 (3d Cir. 1988) ...................................................................................... 24

*Horton v. Merrill Lynch, Pierce, Fenner & Smith Inc.,*
  855 F. Supp. 825, (E.D.N.C. 1994) ........................................................................... 14

*In re Am. Family Enters.,*
  256 B.R. 377 (D.N.J. 2000) ....................................................................................... 17

*In re Anicom Inc. Sec. Litig.*
  No. 00C4391, 2002 U.S. Dist. LEXIS 5575, (N.D. III. March 26, 2002) ................. 20

*In re Bank One Secs. Litigation/First Chi. S'Holder Claims,*
  2002 U.S. Dist. LEXIS 8709, (N.D. Ill May 9, 2002) .............................................. 26

*In re Cendant Corp. Litig.,*
  264 F.3d 201 (3d Cir. 2001) ...................................................................................... 24

*In re Cendant Corp. Sec. Litig.,*
  109 F. Supp. 2d 255 (D.N.J. 2000) ........................................................................... 17

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.,*
  269 F.R.D. 468 (E.D. Pa. 2010) ...........................................................................19, 31

*In re Cigna Corp. Sec. Litig.*
  2007 WL 2071898 (E.D.Pa. 2007) ............................................................................ 13

*In re Community Bank of N. Virginia*
  418 F.3d 277 (3d Cir. 2005) ...................................................................................... 10

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig. ("GM Trucks")*
  55 F.3d 768 (3d Cir. 1995) ....................................................................................9, 13

*In re Ins. Brokerage Antitrust Litig.,*
  579 F.3d 241 (3d Cir. N.J. 2009)............................................................................11, 26

*In re Linerboard Antitrust Litig.,*
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ........................................................................ 12

*In re Lucent Techs., Inc. Sec. Litig.,*
  307 F. Supp. 2d 633 (D.N.J. 2004) ........................................................................... 22

*In re NASDAQ Market-Makers Antitrust Litigation,*
  176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................................. 10

*In re Pet Food Prods. Liab. Litig.,*
  629 F.3d 333 (3d Cir. N.J. 2010).............................................................................. 19

*In re Prudential Ins. Co. of Am. Sales Practices Litig.,*
  962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998)............................ 17, 26, 31

*In re Prudential Sec. Inc. Ltd P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ....................................................................... 11

*In re School Asbestos Litigation*
  921 F.2d 1330 (3d Cir. 1986) ............................................................................. 9

*In re Warfarin Sodium Antitrust Litig.*
  391 F.3d 516 (3d Cir. 2004) ............................................................................... 9

*Jerry Enters v. Allied Bev. Corp.,,*
  178 F.R.D. 437 (D.N.J. 1998) ........................................................................... 23

*Kardonick, et al., v. JP Morgan Chase & Co, et al.,*
  No. 1:10-cv-23235-WMH, Southern District of Florida (Miami), Dkt # 23, 24, 384 .............. 17

*Mack Trucks, Inc. v. Int'l Union, UAW,*
  No. 07-3737, 2011 U.S. Dist. LEXIS 51514 (E.D. Pa. May 12, 2011) ..................................... 12

*McAdams v. Mass Mut. Life Ins. Co.,*
  Civil Action No. 99-30284-FHF, 2002 U.S. Dist. LEXIS 9944
  (D. Mass. May 15, 2002) ................................................................................... 21

*McAlarnen v. Swift Transp. Co.,*
  No. 09-1737, 2010 U.S. Dist. LEXIS 7877 (E.D. Pa. Jan. 29, 2010) ....................................... 22

*McAnaney v. Astoria Fin. Corp.,*
  No. 04-cv-1101, 2006 WL 2689621, (E.D.N.Y. Sept. 19, 2006) ............................................. 23

*Mehling v. New York Life Ins. Co.,*
  246 F.R.D. 467 (E.D. Pa. 2007) ......................................................................... 10

*Morgan v. UPA of Am.,,*
  169 F.R.D.349 (E.D. Mo. 1966) ......................................................................... 20

*Mullane v. Cent. Hanover Bank & Trust Co.*
  339 U.S. 306 (1950) ....................................................................................... 28

*Newman v. Stein,*
  464 F.2d 689 (2d Cir. 1972) ............................................................................. 14

*Newton v. Merrill Lynch, Pierce, Fenner &Smith, Inc.,*
  259 F.3d 154 (3d Cir. 2001) ............................................................................. 19

*Newton v. Merrill Lynch, Pierce, Fenner &Smith, Inc.,*
  259 F.3d 154 (3d Cir. 2001) ............................................................................. 19

*Paxton v. Union Nat'l Bank,*
  688 F.2d 552 (8th Cir. 1982) ........................................................................... 20

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ..................................................................................... 28

*Ragsdale v. Sansai USA, Inc.,*
  Civil No. 07-cv-1246-WQH (CAB), 2008 U.S. Dist. LEXIS 113319
  (S.D. Cal. Mar. 14, 2008) ............................................................................... 15

*Ramirez v. The Lycatel Group,*
    No. 07-5533 (PS), 2009 U.S. Dist. LEXIS 119630 (D.N.J. Dec. 18, 2009) ............................ 15

*Samuel v. Equicredit Corp.,*
    No. Civ. A. 00-6196, 2002 WL 970396, (E.D. Pa. May 6, 2002) ............................................ 11

*Serrano v. Sterling Testing Sys., Inc.,*
    711 F. Supp. 2d 402 (E.D. Pa. 2010) ................................................................................... 17

*Serrano v. Sterling Testing Sys., Inc.,*
    711 F. Supp. 2d 402, 414 (E.D. Pa. 2010) ........................................................................... 17

*Smith v. Prof'l Billing & Mgt. Serv., Inc.*
    2007 WL 4191749 (D.N.J. Nov. 21, 2007) .......................................................................... 10

*Spinelli v. Capital One Bank,*
    265 F.R.D. 598 (M.D. Fla. 2009) ......................................................................................... 26

*Spinelli, et al., v. Capital One Bank (USA) N.A., et al.,*
    No. 8:08-cv-00132-VCM-EAJ, Middle District of Florida, Dkt. # 147 and 231; ..................... 17

*Steward v. Abraham,*
    275 F.3d 220 (3d Cir. 2001) ................................................................................................ 19

*Teachers' Ret. Sys. of LA. v. A.C.L.N., Ltd.,*
    No. 01-cv-11814, 2004 WL 1087261(S.D.N.Y. May 14, 2004) ............................................ 16

*Walker, et al., v. Discover Financial Services, Inc., et al.,*
    No. 1:10-cv-06994, Northern District of Illinois, Dkt. # 153 ................................................ 18

*Zimmerman v. Zwicker & Associates, P.C.*
    2011 WL 65912 (D.N.J. 2011) ............................................................................................ 11

## Rules

Fed. R. Civ. P. 23(a) ........................................................................................... *passium*

Fed. R. Civ. P. 23(b)(3) ........................................................................ 25, 26, 32, 35

Fed. R. Civ. P. 23(e)(1)(B) .................................................................................. 35

Fed. R. Civ. P. 23(e)(1)(C) .................................................................................. 16

Fed. R. Civ. P. 23(b)(3 ....................................................................................... 25

## Treatises

*Manual for Complex Litig.,* ......................................................................... 10, 18, 35

1 Newberg on Class Actions (3d ed. 1992) ............................................................ 27

Plaintiffs Edward T. Esslinger, Gloria Glover, and Ardath Rogers, as well as Peggy Colton, DeShea Head, Nancy Janowski, Cylinda McAlister, James W. McKinney, Margaret Reener, Marilyn Rivera, Dwight C. Samuels and Constantine Yiannacopoulos (named plaintiffs in the related actions described more fully below) (hereinafter collectively referred to as "Plaintiffs") respectfully move this Court for an Order granting Preliminary Approval of the Class Action Settlement and submit this Memorandum of Law in support of the Motion for Preliminary Approval of the Settlement (the "Settlement") memorialized in the agreement between Plaintiffs and HSBC Bank Nevada, N.A. and affiliated entities (referred to as "HSBC" or "Defendants") to settle the actions (the "Settlement Agreement") being contemporaneously filed herewith as Exhibit 1.

As set forth herein and in the proposed Order agreed upon by the parties, the Settlement satisfies the requirements for preliminary approval, the proposed Settlement Class satisfies Federal Rules of Civil Procedure 23(a) and 23(b)(2), certification of a Class is appropriate, and the proposed Notice Plan is appropriate and reasonably calculated to apprise Class Members of their rights. Accordingly, Plaintiffs seek (1) preliminarily approval of this arms-length class action settlement that was reached through mediation; (2) approval of the form of class notice and the class notice plan, and; (3) a date on which the final approval hearing will be held.

## I.    <u>INTRODUCTION</u>

Plaintiffs have reached a $23.5 million settlement with HSBC in the instant class action (the "Litigation") and now respectfully seek an order from the Court: (1) granting preliminary approval to the Settlement; (2) conditionally certifying, for settlement purposes only, a Settlement Class, as defined herein; (3) staying all obligations in the Litigation, notably filing responsive pleadings, including any outstanding responses to motions to dismiss, responding to outstanding discovery as well as any litigation involving the Released Claims by any member of

the Settlement Class pending final approval of the Settlement; (4) preliminarily approving the notices and directing that notice of Settlement be given to the Class in the proposed form and manner, and (5) scheduling a hearing before the Court to determine whether the proposed Settlement should be finally approved.  As detailed herein and in the Settlement Agreement, the proposed Settlement provides significant and material benefits to the Class and was reached only after extensive investigation and research and intensive arm's length negotiations between experienced and informed counsel on both sides.

Accordingly, Plaintiffs respectfully submit that the Court should preliminarily approve the terms and conditions of the Settlement and authorize notice to the Class.

## II.   <u>OVERVIEW OF THE LITIGATION</u>

As set forth in the Stipulation, the following six class actions were filed against the Defendants beginning on or about July 2, 2010 through April 29, 2011:

(1)   *Edward T. Esslinger, et al., v. HSBC Bank Nevada, N.A., et al.*, No. 2:10-cv-03213-BMS, Eastern District of Pennsylvania (hereinafter the "*Esslinger Action*")*;*

(2)   *Cylinda McAlister v. HSBC Bank Nevada, NA, et al.,* 3:10-cv-05831-BHS, District of Washington (Tacoma) (hereinafter the "*McAlister Action")*;

(3)   *Marilyn Rizera v. HSBC Bank Nevada, N.A., et al.,* No. 1:10-cv-03375-RMG-JS, District of New Jersey (hereinafter the "*Rizera Action*");

(4)   *Dwight Samuels v. HSBC Bank Nevada, NA, et al*, 1:11-cv-00548-EEB, Northern District of Illinois (hereinafter the "*Samuels Action*");

(5)   *McKinney v. HSBC Card Servs., Inc. et al.*, No. 3:10-cv-00786-JPG-SCW (Southern District of Illinois) (East St. Louis) (hereinafter the "*McKinney Action*"); and

(6)   *Peggy Colton, et al., v. HSBC Bank Nevada, N.A., et al.*, 2:11-cv-03742-MMM-MAN, Central District of California (hereinafter the "*Colton Action*").

Each of these actions (collectively referred to as the "Related Actions") was predicated on similar facts and each contained allegations that HSBC was engaging (a) in breaches of

contract, (b) breaches of the implied covenant of good faith and fair dealing, and (c) violations of unfair and deceptive acts and practices in violation of statutes of various states, among other wrongdoing, in connection with marketing and selling debt cancellation and suspension products known as "HSBC Payment Protection," "Payment Protection," and other monikers offering similar coverage (these products are referred to herein as "Payment Protection").

The allegations in the Related Actions include, among others, that: (1) HSBC marketed and sold Payment Protection products to customers by misrepresenting and omitting certain material facts regarding the terms and conditions of the product; (2) HSBC enrolled card holders (hereinafter referred to as "Card Holders") in Payment Protection without their consent; (3) HSBC improperly marketed and sold Payment Protection without being subject to insurance regulations; (4) HSBC improperly required Card Holders to enroll in Payment Protection before providing Card Holders with terms and conditions; (5) certain Card Holders were improperly enrolled in Payment Protection despite being ineligible to ever receive benefits; (6) HSBC misrepresented the fees associated with Payment Protection in that they were excessive in relation to the benefits received; (7) HSBC refused to refund Plan fees to Card Holders customers who were either ineligible for or denied Payment Protection benefits, and continued to charge such Card Holders for the product; and (8) HSBC administered the Plan in such a way filing a claim for benefits was so difficult and confusing as to render the product worthless or virtually worthless to Card Holders.

The HSBC Defendants filed Motions to Dismiss in *Esslinger*, *Rizera* and the *McKinney* Actions.[1]  In their motion to dismiss, Defendants argue, among other things, that Plaintiffs' state consumer protection claims are not actionable because Plaintiffs failed to allege proximate

---

[1] In other Related Actions, extensions of time to file responsive pleadings were sought and granted by the Courts.

causation; Plaintiffs' other common law claims should be dismissed for failure to sufficiently identify the provision(s) of the contract allegedly breached; Plaintiffs' unconscionability claim is barred by the statute of limitations; and all of Plaintiffs' claims are preempted by federal law because debt cancellation and suspension contracts arise out of the incidental powers of the National Bank Act.

Plaintiffs in the *McKinney* case filed a Memorandum in Opposition to Defendants' Motion to Dismiss, and HSBC filed a Reply Memorandum in Support and requested oral argument on their Motion to Dismiss. Prior to the deadline for responding to HSBC's Motion to Dismiss in *Esslinger* and *Rizera* and before the oral argument in *McKinney*, these cases were settled in principle and the deadlines were stayed. In absence of the Settlement, Defendants indicated that they would file Motions to Dismiss in the remaining Related Cases and/or moved to compel arbitration of all claims in all cases.

The parties agreed to attempt to resolve their litigation through mediation. In advance of the mediation, HSBC Defendants provided Plaintiffs' Counsel with extensive and detailed non-public data regarding Payment Protection enrollment, benefit approval/denial history and revenues as well as thousands of documents regarding the HSBC's Payment Protection products and practices. This exchange, coupled with the extensive investigation and research already conducted by Plaintiffs' Counsel, as well as their experience from litigating other payment protection cases against other banks, allowed Plaintiffs' Counsel to fully assess the strengths and weaknesses of both Plaintiffs' claims and the potential defenses available to Defendants prior to the mediation.

On June 15, 2011 and July 18, 2011, the parties engaged in full day mediation sessions facilitated by a reputable and skilled mediator, Jonathan B. Marks, who had also mediated

another case involving a similar payment protection product.  On July 19, 2011, the parties had a half-day mediation session.  On December 22, 2011, the parties engaged in an additional mediation session with Jonathan B. Marks for approximately an hour to wrap up final outstanding issues.  Against this background, and with the aid of an experienced mediator, the parties were able to effectively engage in informed, arm's length negotiations.  In this regard, the negotiations involved experienced counsel on both sides who vigorously represented their respective parties' position.  At the end of the mediation session on July 19, 2011, the parties reached an agreement in principle and executed a settlement term sheet ("Settlement Term Sheet") outlining the Settlement attached as Exhibit 2.

Following this meeting, the parties agreed that a settlement in principle had been negotiated.  Courts were informed by way of Notice of Settlement on or around July 27, 2011.  Each court entered an Order staying the case pending notice of settlement.  The parties continued hard-fought negotiations over the next six months to use the Settlement Term Sheet to develop a written, mutually acceptable Settlement Agreement and exhibits thereto.  Eventually, the parties executed a final settlement agreement in January 2012.  *See* Exhibit 1.

Moreover, to confirm the reasonableness of the Settlement's terms and conditions, Plaintiffs' Counsel engaged in confirmatory discovery. This process, which began after the parties executed the Settlement Term Sheet, included reviewing and analyzing thousands of pages of internal documents from Defendants relating to third party contracts for marketing, selling, processing and analyzing the Payment Protection Plans.

Plaintiffs also interviewed the Senior VP of Marketing for HSBC in Card and Retail Services, John Rindler, on September 12, 2011.  Mr. Rindler was responsible for "ancillary products," including payment protection products, for HSBC during the Class Period.  Plaintiffs

spoke with Mr. Rindler about: (a) HSBC's marketing and sales of Payment Protection, including disclosures (e.g., direct mail, phone scripts), (b) how Payment Protection pricing was determined, (c) agreements with retailers for private label cards, (d) marketing and administration of the Plan, including any agreements with third parties used by HSBC for marketing and administration, and (e) HSBC's controls over third parties. The information Mr. Rindler provided to Plaintiffs confirmed and clarified information already presumed by the Plaintiffs and provided additional, non-public information that provided Plaintiffs additional comfort in the terms of the Settlement reached with HSBC.

On November 10, 2011, Plaintiffs conducted an interview with HSBC representative, Jill Dowd who was offered by HSBC as the representative most knowledgeable about the analytics and metrics of Payment Protection. In particular, Ms. Dowd provided Plaintiffs information regarding the marketing, pricing, benefits and administration of the plans, along with the processes by which analytic reports were generated, analyzed and confirmed. These reports included data relative to the number of enrollees in the Plan, the average monthly ending balances on Card Holders' accounts, Plan revenue figures, average length of Plan enrollment, and benefits activated vs. benefits denied.

In accordance with the terms of the Settlement, Plaintiffs are submitting herewith an Amended Complaint on behalf of the following class (the "Class"):

> All persons in the United States who enrolled in or were billed for HSBC debt cancellation and debt suspension products (generally, "Payment Protection") between July 2, 2004 and [date of preliminary approval of the settlement].

## III.   THE PROPOSED SETTLEMENT

The parties reached agreement on the terms of the proposed settlement through a vigorous debate of legal and factual theories by counsel and extensive arm's-length negotiations.

In settlement of all claims in the Litigation, the Defendants have agreed to fund a claims-made settlement in the amount of $23.5 million dollars, for the benefit of the Settlement Class.

Under the proposed settlement, Settlement Class Members shall be eligible to claim one of the following settlement awards per account:

a). Settlement Class Members who, as of the Effective Date, have not previously received full refund of their HSBC Payment Protection fees, have not previously received benefits, were enrolled in an HSBC Payment Protection product for twelve (12) months or less and who submit a Claim Form affirming that they were enrolled in and paid for Payment Protection without their consent, may claim a settlement award of approximately $30.00.

b). Settlement Class Members who, as of the Effective Date, have not previously received a full refund of their HSBC Payment Protection fees and who submit a Claim Form affirming that they submitted a claim for benefits under an HSBC Payment Protection product but believe that their claim for benefits was improperly denied, may claim a settlement award of approximately $60.00.

c). Settlement Class Members who, as of the Effective Date, have not previously received a full refund of their HSBC Payment Protection fees and are not eligible for or otherwise do not claim under subparagraphs (a) and (b) above, and who submit a Claim Form affirming that they were dissatisfied with any aspect of an HSBC Payment Protection product, may claim a settlement award of approximately $15.00.

Payments to Settlement Class Members shall be by check except, at HSBC's sole option, payments may be made by account credit to the Settlement Class Members who are current

HSBC cardmembers carrying a balance owed to HSBC (at the time settlement awards are paid to Settlement Class Members) and to Settlement Class Member whose accounts have been charged off.

In the event that the total of the foregoing award exceeds or is less than the balance remaining in the Settlement Fund after payment of the Settlement Costs, the award amounts shall be reduced or increased on a pro rata basis; provided, however, that no Settlement Class Member shall recover a pro rata share in excess of $150.00. Any balance remaining in the Settlement Fund after payment of Settlement Costs and the foregoing amounts, including the proceeds of any uncashed settlement checks (as of ninety (90) days following the date of the check) and any balance resulting from rounding down in a pro rata calculation, shall be donated *cy pres* to charities mutually agreed upon by the Settling Parties and approved by the Court.

Plaintiffs intend to file a motion for an award of attorneys' fees not to exceed one-third of the settlement fund and reimbursement of expenses. Plaintiffs will also request the Court to approve service awards of $3,500 for their efforts in prosecuting this litigation on behalf of the class. *See Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.") (citations, internal quotations omitted).

As detailed below, the proposed settlement is fair, reasonable and adequate and satisfies all criteria for preliminary settlement approval and conditional class certification. Plaintiffs and Class Counsel therefore respectfully move this Court to preliminary approve the Settlement Agreement, conditionally certify a class for settlement purposes, direct the issuance of notice to the Class, appoint Class Counsel and Class Representatives, set deadlines for Class Members to

opt-out of, object to, or comment on the proposed Settlement Agreement and schedule a Fairness Hearing to consider final approval of the proposed settlement.

## IV.    LEGAL ARGUMENT

The Settlement Agreement should be approved by this Court. The settlement is the result of months of arm's-length negotiations among the parties and their highly-experienced counsel, and informed by the exchange of significant information throughout the settlement process. The settlement provides significant monetary benefits considering all of the attendant risks of litigation. Prior to reaching resolution, Plaintiffs' counsel thoroughly investigated the case, and also reviewed thousands of documents provided by HSBC for purposes of the settlement. As a result of Plaintiffs' counsel investigation, ample information was gathered to assess the strengths and weaknesses of the parties' positions. Having weighed the likelihood of success and the inherent risks and expense of litigation, Plaintiffs and their counsel strongly believe that the proposed settlement is "fair, reasonable, and adequate" as required by Fed. R. Civ. P. 23(e)(1)(C).

### A.    Applicable Legal Standards for Preliminary Approval

Federal courts favor class action settlements. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (recognizing the "strong presumption in favor of voluntary settlement agreements" and noting that it is "especially strong" in the context of class action cases). "There is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *see also In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.* ("*GM Trucks*")*,* 55 F.3d 768, 785 (3d Cir. 1995) ("[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); *In re School Asbestos Litigation*, 921 F.2d 1330, 1333 (3d Cir. 1986) (noting Third

Circuit's policy of "encouraging settlement of complex litigation that otherwise could linger for years"); *In re Community Bank of N. Virginia*, 418 F.3d 277, 299 (3d Cir. 2005) ("[A]ll Federal Circuits recognize the utility of . . . 'settlement classes' as a means to facilitate the settlement of complex nationwide class actions.").

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis.  The procedure for judicial approval of a proposed class action settlement is divided into a two-step process.  *See Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 438 (E.D.Pa. 2008); *Curiale v. Lenox Group, Inc.*, Civ. A. 07-1432, 2008 WL 4899474, at *4 (E.D. Pa. Nov. 14, 2008).  "Preliminary approval of a proposed class action is the first [step]."  *In re NASDAQ Market-Makers Antitrust Litigation,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997).  At this level, "the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and hearing." *Manual for Complex Litigation,* § 13.14, at 173 (Federal Judicial Center, 2004); *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007); *Smith v. Prof'l Billing & Mgt. Serv., Inc.*, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007) ("Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason."); *In re Prudential Sec. Inc. Ltd P'ships Litig.,* 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("The Court's function now is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.") (citation omitted).  "If the district court finds a settlement proposal 'within the range of possible approval,' it then proceeds to be the second step in the review process, the fairness hearing." *Armstrong v. Board of Sch. Dirs.,* 616 F.2d 305, 314 (7th Cir. 1980), *overruled on*

*other grounds by Felzen v. Andreas,* 134 F.3d 873 (7th Cir. 1998); *Samuel v. Equicredit Corp.*, No. Civ. A. 00-6196, 2002 WL 970396, at *1 n.1 (E.D. Pa. May 6, 2002).[2]

At this juncture, Plaintiffs request only that the Court grant preliminary approval of the proposed Settlement and provide for notice to the Class.   "Although the Court's role in evaluating the fairness, reasonableness and adequacy of the parties' proposed settlement is circumscribed, especially at the preliminary approval stage," if the "proposed settlement appears obviously deficient, the ruling should be issued before rather than after the parties incur the administrative expense to publish notice to the class and handle any objections." *Zimmerman v. Zwicker & Associates, P.C.*, 2011 WL 65912, at *3 n.5 (D.N.J. 2011).

Accordingly, where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to the class representatives or segments of the class and falls within the range of possible approval, preliminary approval should be granted because the proposed Settlement and the proposed notice satisfy the requirements for preliminary approval in all aspects.

### B.    The Proposed Settlement Warrants Preliminary Approval

In deciding whether to grant preliminary approval, there is "an initial presumption of fairness" for settlements negotiated at arm's length by experienced counsel informed by sufficient discovery.  *G.M. Trucks*, 55 F.3d at 785; *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 604, n.6 (3d Cir. 2010); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638

---

[2] It is at the fairness hearing that the Court "is to adduce all information necessary to enable [it] [] to rule on whether the proposed settlement is fair, reasonable and adequate." *Armstrong,* 616 F.2d at 314 (citation omitted).

(E.D. Pa. 2003).[3]  The only issue before the Court is whether the settlement "discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval."  *Mehling*, 246 F.R.D. at 472 (citations omitted).  At this stage, the court "need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute."  *Id.*; *see also Mack Trucks, Inc. v. Int'l Union, UAW*, No. 07-3737, 2011 U.S. Dist. LEXIS 51514, at *7-8 (E.D. Pa. May 12, 2011).

Turning to the specifics of this Litigation, preliminary approval of the Settlement should be granted because (1) the settlement negotiations occurred at arm's-length and is within the range of possible approval; (2) there has been sufficient discovery and there is no reason to doubt its fairness; and (3) counsel, and particularly Class counsel, are experienced in similar litigation. *See GM Trucks,* 55 F.3d at 785; *Mehling*, 246 F.R.D. at 472.

## 1.     The Settlement was Reached Through Arm's-Length Negotiations and Falls Within the Range of Possible Approval

The proposed Settlement is a result of arm's-length negotiations in formal mediation between Class counsel and HSBC and its counsel under the auspices of an experienced independent mediator.   "[T]he participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."  *Hall v. AT & T Mobility LLC*, 2010 WL 4053547, at *7 (D.N.J. 2007) (internal quotation marks omitted); *see also In re Cigna Corp. Sec. Litig.,* 2007 WL

---

[3] The Court of Appeals for the Third Circuit has adopted a nine-factor test for determining whether a settlement is fair, reasonable, and adequate at the final approval stage. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. N.J. 2009).  For purposes of preliminary approval, however, the Court need not address all of these factors, as "the standard for preliminary approval is far less demanding."  *Gates v. Rohm & Haas Co*., 248 F.R.D. 434, 444 n.7 (E.D. Pa. 2008); *see also Curiale v. Lenox Group, Inc.*, 2008 WL 4899474, at *9 n.4 (E.D. Pa. Nov. 14, 2008).

2071898 at *3 (E.D. Pa. 2007) ("Concerning the presumption of fairness, it is clear that negotiations for the settlement occurred at arm's length, as the parties were assisted by a retired federal district judge who was privately retained and served as a mediator.").  In this case, the material terms of the proposed Settlement are the product of a mediation session conducted with a neutral mediator.  As the mediator can and will attest, these negotiations were arm's-length throughout.  Equally important, counsel for the Defendants vigorously defended their clients' position and demonstrated their commitment to litigate this Litigation to its conclusion.  Hence, the proposed Settlement represents concessions by both parties after hard-fought negotiations conducted by experienced counsel on both sides who were thoroughly familiar with the factual and legal issues.  In these circumstances, it is clear that the proposed Settlement is not the product of collusion.

Further, the settlement reached was squarely within the range of possible approval.  At the preliminary approval stage, a court should examine whether the settlement is within the range of possible final approval, or, in other words, whether there is probable cause to notify the Class of the proposed settlement.  *Horton v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 855 F. Supp. 825, 827 (E.D.N.C. 1994).   Courts should exercise restraint in examining a proposed settlement and recognize that "[s]ettlements, by definition are compromises which 'need not satisfy every single concern of the plaintiff class, but may fall anywhere within the broad range of upper and lower limits.'"  *In re Saxon,* (CCH) ¶ 92, 414 at 92,525 (quoting *Argo v. Harris,* 84 F.R.D. 646, 647-48) (E.D.N.Y. 1979)); *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972) ("[O]n any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs

necessarily inherent in taking any litigation to completion"). A court should not engage in a trial on the merits when considering the propriety of the settlement:

> The trial court should not turn . . . the settlement hearing into a trial or rehearsal of the trial nor need it reach any dispositive conclusions on the admittedly unsettled legal issues in the case. It is not part of its duty in approving a settlement to establish that as matter of legal certainty . . . the subject claim or counterclaim is or is not worthless or valuable.

*Finn v. FMC Corporation,* 528 F.2d 1169, 1172-73 (4th Cir. 1975) (internal quotations and citations omitted) (granting final approval to settlement).

In the present case, the Settlement is a product of extensive arm's length negotiations between the parties. Indeed, during the negotiations, each of the parties made concessions and won positions on difficult and hard fought issues. Moreover, the $23.5 million Settlement Fund represents an excellent recovery and provides the Settlement Class with immediate benefits without the costs of continued litigation. Accordingly, the Settlement is obtained through arm's-length negotiations, falls within the range of a reasonable settlement and consequently, should be preliminarily approved. *See Ramirez v. The Lycatel Group,* No. 07-5533 (PS), 2009 U.S. Dist. LEXIS 119630, at *3-4 (D.N.J. Dec. 18, 2009) (granting preliminary approval to class action settlement of claims based on consumer protection laws); *Date v. Sony Elecs., Inc.,* Case No. 2:07-cv-15474 PDB RSW, 2008 U.S. Dist. LEXIS 56458, at *9-10 (E.D. Mich. July 25, 2008) (granting preliminary approval of class action settlement); *Ragsdale v. Sansai USA, Inc.,* Civil No. 07-cv-1246-WQH (CAB), 2008 U.S. Dist. LEXIS 113319, at *12 (S.D. Cal. Mar. 14, 2008) (recommending preliminary approval of class action settlement).

### 2. <u>The Settlement was Reached Based on a Well Developed Factual Record</u>

The Complaints themselves filed by the named Plaintiffs indicates that proposed Class Counsel undertook a thorough investigation in developing Plaintiffs' allegations. In fact, counsel

has been investigating and exploring Payment Protection plans of HSBC and other credit card companies for a number of years, and in doing so has gathered a wealth of information from hundreds of customers who reported their experiences with debt suspension / debt cancellation plans including HSBC Payment Protection.  In addition, counsel for Plaintiffs and Defendants have had frank discussions as part of the settlement negotiations, including informal discovery related to issues surrounding Plaintiffs' claims.  Moreover, as a result of the parties' settlement discussions, HSBC shared documents and information related to its Payment Protection at issue in the Settlement.  In particular, HSBC provided, and Plaintiffs' reviewed and analyzed: sales, marketing and administration materials (e.g. solicitations, advertisements, detailed telemarketing scripts, applications for enrollment into the Plan, promotional materials, enrollment papers, and Plan terms and conditions); the number of plan members during each year of the class period; the number of new enrollees each year of the class period; cumulative cancellation data broken down by 30, 60, 90 and 365 day increments for year of the class period; Plan revenue data (fees, refunds, and fees from charged off accounts) for each year of the class period; total benefits paid each year from 2006 to present; number of activation requests; total number of benefit approvals; total number of benefit denials; percentage of denials; reasons for denials; and the number associated therewith for each year of the class period.

As a result of this well-developed record, Plaintiffs' counsel was well-positioned to evaluate the strengths and weaknesses of their case and the appropriate basis upon which to settle it.  The record provides sufficient information for this Court to determine that the proposed settlement is fair.

Further, there is no reason to doubt the Settlement's fairness.  A proposed settlement that is the result of arm's-length negotiations by class counsel is presumptively fair and reasonable.

*See Teachers' Ret. Sys. of LA. v. A.C.L.N., Ltd.,* No. 01-cv-11814, 2004 WL 1087261, at *1 (S.D.N.Y. May 14, 2004).   Here, the Settlement was reached only after Plaintiffs' Counsel conducted an extensive factual investigation into Defendants' alleged misconduct, which included reviewing and analyzing pertinent public and non-public information and documents produced by Defendants in advance of the mediation and subsequent thereto.   Additionally, Plaintiffs interviewed the HSBC employees with the most pertinent information regarding Payment Protection, John Rindler and Jill Dowd.   Thus, Plaintiffs' Counsel had a wealth of information at their disposal before entering into the Settlement.   Consequently, Plaintiffs' Counsel were able to adequately assess the strengths and weaknesses of Plaintiffs' case and potential defenses available to Defendants and balance the benefits of the Settlement against the risks of further litigation.

Moreover, the participation of a neutral mediator, the respected Jonathan B. Marks, in the settlement process further underscores the fact that the proposed Settlement is not the product of collusion.   Consequently, there is no reason to doubt the fairness of the Settlement.

### 3.    Counsel are Experienced in Similar Litigation

Recommendations of experienced counsel are entitled to great weight in evaluating a proposed settlement in a class action.   *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 543 (D.N.J. 1997), *aff'd*, 148 F.3d 283, 311 (3d Cir. 1998); *cf. Ehrheart*, 609 F.3d at 594 ("The settlement agreement was negotiated through and executed by experienced counsel on both sides . . . .").   "Significant weight" should be given "to the belief of experienced counsel that settlement is in the best interest of the class, so long as the Court is satisfied that the settlement is the product of good faith, arms-length negotiations."   *In re Am. Family Enters.*, 256 B.R. 377, 421 (D.N.J. 2000) (internal quotation marks omitted); *see also Serrano v. Sterling*

*Testing Sys., Inc.*, 711 F. Supp. 2d 402, 414 (E.D. Pa. 2010); *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 255 (D.N.J. 2000).

Counsel for Plaintiffs is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases involving consumer class actions and the Payment Protection product in particular. *See* Firm Resumes of Plaintiffs' Counsel, attached hereto as Exhibit 3. In fact, class counsel has negotiated settlements with other credit card companies regarding similar plans, including class actions against Capital One, Chase and Discover. *See Spinelli, et al., v. Capital One Bank (USA) N.A., et al.,* No. 8:08-cv-00132-VCM-EAJ, M.D. Fla., Dkt. # 147 and 231; *Kardonick, et al., v. JP Morgan Chase & Co, et al.,* No. 1:10-cv-23235-WMH, S.D. Fla. (Miami), Dkt. # 23, 24, 384; *Walker, et al., v. Discover Financial Services, Inc., et al.,* No. 1:10-cv-06994, N.D. Ill., Dkt. # 153. Each firm on its own is well-established, possesses extensive knowledge of and experience in prosecuting class actions in courts throughout the United States, and has recovered hundreds of millions of dollars for their clients. As a cohesive group of firms, the experience, resources and knowledge Class Counsel brings to this lawsuit is extensive and formidable. Needless to say, Counsel is qualified to represent the Settlement Class and will, along with the Class Representatives, vigorously protect the interests of the Class.

### C.    Conditional Certification of the Settlement Class is Appropriate

In order to proceed with the preliminary approval process, it is necessary for the Court to preliminarily certify a class for purposes of the Settlement. At this point in the approval process, conditional certification permits notice of the proposed settlement to issue in order to inform Settlement Class members of the existence and terms of the proposed settlement, their right to be

heard on its fairness, their right to opt out, and the date, time, and place of the formal fairness hearing. *See Manual for Complex Litig.*, at § 21.632, § 21.633.[4]

Federal Rule 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and the action qualifies under one of the subdivisions of Rule 23(b). Rule 23(a) provides:

> One or more of the class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defense of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Additionally, Rule 23(b) provides, in relevant part:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and, in addition:

> (3) the court finds that the question of law or fact common to members of the class predominate over any question affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

"[R]egardless of whether a district court certifies a class for trial or for settlement, it must first find that the class satisfies all the requirements of Rule 23." *In re Community*, 418 F.3d at 300. For settlement purposes, HSBC has conditionally stipulated that Plaintiffs satisfy the class certification requirements set forth in Rule 23. Additionally, for the reasons below, this Class meets all of the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3), justifying preliminary certification of the proposed Class for settlement purposes.

---

[4] HSBC does not join in Plaintiffs' request regarding certification, but stipulates to certification for the sole purpose of effectuating this Settlement. HSBC reserves the right to challenge certification if this Settlement fails to be considered "Final" as that term is defined in the Settlement Agreement.

1.        **The Class is Sufficiently Numerous**

Numerosity requires a finding that the class is "so numerous that joinder of all members is impracticable." *Newton v. Merrill Lynch, Pierce, Fenner &Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001); *see also In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 342 n.14 (3d Cir. 2010). While "[n]o magic number exists satisfying the numerosity requirement," *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 477 (E.D. Pa. 2010) (quotation marks and citation omitted), the requirement is satisfied here. *See id.*; *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) ("generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met"); *Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D. Pa. 1990) (observing that courts have certified classes with as few as 14 persons); *Steward v. Abraham,* 275 F.3d 220, 226-27 (3d Cir. 2001) ("No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."); *see also* 1 Newberg on Class Actions 3.05, at 3-25 (3d ed. 1992) (suggesting that any class consisting of more than forty members "should raise a presumption that joinder is impracticable");

Here, the parties have identified 22,697,615 million potential Settlement Class Members.[5] Based on this estimate and the fact that HSBC markets its credit cards throughout the country, it is reasonable to assume that the Class is geographically dispersed throughout the United States, making joinder of all members impractical. *Hammett v. American Bankers Ins. Co.,* 203 F.R.D. 690, 694 (S.D. Fla. 2001) ("There is no definite standard as to the size of a given class, and Plaintiff's estimate need only be reasonable."); *In re Anicom Inc. Sec. Litig.* No. 00C4391, 2002

---

[5] This figure was derived from 2004 through about June 15, 2011 enrollment data confirmed by HSBC at the mediation.

U.S. Dist. LEXIS 5575, at *6 (N.D. Ill. Mar. 26, 2002) ("Plaintiff need not demonstrate the exact number of class members so long as a conclusion is apparent from good faith estimates"). Moreover, in addition to the size of the class, a court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members. *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 560 (8th Cir. 1982); *Morgan v. UPA of Am.,* 169 F.R.D. 349, 355 (E.D. Mo. 1966).   Here, the members of the Class have suffered, on an individual basis, relatively small amounts of damage when compared to the costs of trying individual suits. Realistically, individual damages would likely be in the range of a few hundred dollars, if that, but, collectively, the members of the Settlement Class have suffered millions upon millions of dollars of damage.   No single member of the Settlement Class could afford to prosecute this action on an individual basis because the costs associated with this case would far outweigh his or her individual claim.

**2.**     **Common Questions of Law or Fact Exist**

To certify the Settlement Class there must be "question of law or fact in common to the class." Fed. R. Civ. P. 23(a)(2).  The Third Circuit has held that "commonality" may be satisfied by <u>one</u> common issue. *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 527 (3d Cir. 2004); *see also In re CIGNA,* 2006 U.S. Dist. LEXIS 58560, at *7.  As such, "[t]he presence of some factual differences in the claims of the class [] does not preclude a finding of commonality." *McAdams v. Mass Mut. Life Ins. Co.,* Civil Action No. 99-30284-FHF, 2002 U.S. Dist. LEXIS 9944, at *10 (D. Mass. May 15, 2002).  In this case, questions of law or fact common to the Settlement Class include, among others, the following:

- Whether HSBC's sales, billing, and marketing scheme as alleged in the Second Amended Consolidated Class Action Complaint is fraudulent, deceptive, unlawful, and/or unfair in violation of states' consumer protection laws;

- Whether HSBC's common and uniform sales, billing, and marketing schemes (including imposing Payment Protection on consumers without consent enrolling consumers who are not eligible for benefits, and improperly denying claims) related to Payment Protection insurance as alleged in the Second Consolidated Class Action Amended Complaint constitutes an unfair and/or deceptive trade practice as under states' consumer protection laws;

- Whether Plaintiffs and the Class Members are entitled to restitution of all amounts acquired by HSBC through its common and uniform scheme;

- Whether Plaintiffs and the Class Members are entitled to injunctive relief requiring the disgorgement of all wrongfully collected fees by HSBC;

- Whether Plaintiffs and the Class Members are entitled to prospective injunctive relief enjoining HSBC from continuing to engage in the fraudulent, deceitful, unlawful, and unfair common scheme as alleged in the Second Amended Consolidated Class Action Complaint; and

- Whether Plaintiffs and the Class Members are entitled to recover compensatory and punitive damages as a result of HSBC's deceptive, fraudulent, unlawful wrongful and/or unfair conduct.

In sum, each member of the Settlement Class was subjected to the same course of conduct by HSBC, involving similar marketing materials, sales agreements, and billing statements, and, therefore, their claims arise from identical acts of HSBC. Courts have recognized commonality in similar circumstances. *See Brink v. First Credit Res.,* 185 F.R.D. 567, 570 (D. Ariz. 1999) (holding, in case against credit card company, that commonality requirement was satisfied because "relief for each potential class member depends upon the common legal issue of whether Defendant violated one or more of sections of the FDCPA when it mailed the credit card certificate to plaintiffs"); *Spark,* 178 F.R.D. at 435 (commonality requirement was satisfied in an action against a credit card company for unfair and deceptive practices where "[e]ach of the proposed plaintiffs' claims stem[med] from the same general

representative by [defendant], and the issues for each of these plaintiffs [would] be identical"). Accordingly, the commonality requirement has been met.

### 3. The Representative Plaintiffs' Claims are Typical of Those of the Class

The "typicality" prerequisite of Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The purpose of this requirement is "designed to align the interest of the class and the class representatives so that the latter will work to the benefit of the entire class through the pursuit of their own goals." *In re Warfarin,* 391 F.3d at 531; *see also In re Am Med. Sys.,* 75 F.3d 1069, 1082 (6th Cir. 1996).  Typicality is satisfied if the plaintiff's claims are not "markedly different" from those of other class members, *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985); *see also McAlarnen v. Swift Transp. Co.*, No. 09-1737, 2010 U.S. Dist. LEXIS 7877, at *12 (E.D. Pa. Jan. 29, 2010), and Plaintiffs and the Class "point to the same broad course of alleged fraudulent conduct to support a claim for relief."  *In re Lucent Techs., Inc. Sec. Litig.*, 307 F. Supp. 2d 633, 640 (D.N.J. 2004).  "Certainly, as in this case, when the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members . . . and if it is based on the same legal theory . . . the typicality requirement is easily satisfied." *Jerry Enters v. Allied Bev. Corp.,*, 178 F.R.D. 437, 442 (D.N.J. 1998) (internal citations and quotations omitted); *see also McAnaney v. Astoria Fin. Corp.,* No. 04-cv-1101, 2006 WL 2689621, at *4 (E.D.N.Y. Sept. 19, 2006) (quoting *DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1174 (8th Cir. 1995) ("The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff.")).

In the present case, the proposed Class Representatives' claims are typical of those of the Settlement Class Members because they arise from the same event, conduct or practice giving

rise to the claims of absent Settlement Class Members and seek the same relief.   More specifically, the claims of the proposed Class Representatives and each of the Settlement Class Members are predicated on HSBC's mass marketing approach that uses standardized marketing and business practices that are applied in a uniform manner and standardized language in representing the terms and conditions of HSBC's Payment Protection Products.   Additionally, the proposed Class Representatives seek to recover damages caused by the same materially false and misleading statements and course of conduct that give rise to the claims of the Settlement Class.   As such, the claim of the proposed Class Representatives and the claims of the Settlement Class Members are so interrelated that the interest of the Settlement Class Members will be fully and adequately protected.   Accordingly, the proposed Class Representatives claims are typical of those of the Settlement Class.

### 4.   The Proposed Class Representatives and their Counsel Will Adequately Protect the Interests of the Class and Class Counsel Should be Appointed as Requested

This requirement of Rule 23(a)(4) "serves to uncover conflicts of the interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor,* 521 U.S. 591, 594 (1997).   Adequacy requires the satisfaction of two prongs.   First, "it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees' [interests]." *G.M. Trucks,* 55 F.3d at 800; *In re Cendant Corp. Litig.,* 264 F.3d 201, 265 (3d Cir. 2001) (quoting *Hassine v. Jeffes,* 846 F.2d 169, 179 (3d Cir. 1988)).   Second, "it tests the qualifications of the counsel to represent the class." *Id.*   Plaintiffs satisfy both prongs of the adequacy requirement.

First, the proposed Class Representatives' interests are directly aligned with, and not in conflict with, the interest of the Settlement Class Members.   Plaintiffs and each Class Member have an identical interest in establishing HSBC's liability.   Plaintiffs and each Class Member

have been injured in the same manner.  Plaintiffs assert the same legal claims and theories as those of all Class Members.  Plaintiffs seek the identical relief that would be sought by all members of the Class.  There is no conflict between Plaintiffs' claims and those of the proposed Settlement Class.  Each Plaintiff has assumed the responsibility of representing the Settlement Class and has stood ready to represent the class at trial if necessary.  Plaintiffs are prepared to continue diligently pursuing this action in cooperation with counsel.  Plaintiffs have taken seriously their obligations to the Settlement Class.  Nothing more is required.

Second, there also can be no dispute that Plaintiffs' Counsel is capable of prosecuting this Litigation.  Indeed, Plaintiffs' Counsel has extensive experience in prosecuting consumer fraud class actions.  *See* Firm Resumes at Exhibit 3.  As reflected in the respective firm resumes, each firm is well-established, possesses extensive knowledge of and experience in prosecuting class actions in courts throughout the United States, and has recovered hundreds of millions of dollars for their clients.  Needless to say, Plaintiffs' Counsel is qualified to represent the Settlement Class and will, along with the Class Representatives, vigorously protect the interest of the Class.

Beyond the adequacy test of Rule 23(a)(4), the Court must consider the counsel's work performed, experience, knowledge and resources before appointing Class Counsel.  Fed. R. Civ. Pro. 23(g)(1)(c); *see also Hanlon v. Aramark Sports, LLC,* 2010 U.S. Dist. LEXIS 9029, at *17-18 (W.D. Pa. Feb. 3, 2010).  Plaintiffs' Counsel satisfy these factors: it has performed substantial work, including reviewing thousands of pages of documents, interviewing witnesses, and researching applicable law to be able to fully assess the strengths of Plaintiffs' claims and possible defenses available to Defendants.  Plaintiffs' Counsel also has served as lead counsel or co-lead counsel in numerous class actions involving complex litigation, as reflected in the respective firm resumes.  *See* Exhibit 3.  Finally, Plaintiffs' Counsel has already committed

substantial resources to litigate this case.  Accordingly, for the purposes of Rule 23(g), the Court should appoint as Class Counsel for the purposes of this Settlement Class: Golomb & Honik, P.C.; Nagel Rice, LLP; Taus Cebulash & Landau LLP; Carney Williams Bates Pulliam & Bowman, PLLC; Carey, Danis & Lowe; Owings Law Firm; Paris Ackerman & Schmierer; Lieff Cabraser Heimann & Bernstein, LLP; Carter Walker PLLC; Glancy Binkow & Goldberg LLP; and Murray Frank LLP.  Class Counsel has agreed that three firms, Golomb & Honik, P.C., Nagel Rice, LLP and Taus Cebulash & Landau LLP, may serve as Co-Lead Class Counsel. Accordingly, Class Counsel requests that the Court name these three firms as Co-Lead Class Counsel for the purposes of this Settlement Class.

### 5.     The Requirements of Rule 23(b) are Satisfied

Certification of the Settlement Class is further appropriate because the questions of law or fact common to members of the Settlement Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the case.  *See* Fed. R. Civ. P. 23(b)(3). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997).  The existence of individual questions of fact does not *per se* preclude class certification.  *Eisenberg*, 766 F.2d at 787. Rather, the predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc.*, 521 U.S. at 623; *see also In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009).  "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violation of the antitrust laws." *Id.* at 625; *In re Prudential Ins. Co. of America Sales Practices Litig.,* 148 F.3d 283, 315

(3d Cir. 1998) (certifying a nationwide settlement class asserting claims for, *inter alia*, unjust enrichment and violation of state consumer protection laws); *Spinelli v. Capital One Bank,* 265 F.R.D. 598, 601 (M.D. Fla. 2009) (finding "predominance is met because the common question of whether Defendants' Payment Protection program had any value predominates over any other issue.").

      Here, like these cases, the proposed Settlement Class is well-suited for certification because questions common to the Settlement Class Members predominate over questions affecting only individual Settlement Class Members, and the class action device provides the best method for the fair and efficient resolution of the Settlement Class Members' claims against HSBC.  First, the issues of HSBC's liability is centered on its Payment Protection products, which were universally and uniformly marketed, sold and administered to all cardholders.  *See, e.g., In re Bank One Secs. Litigation/First Chi. S'Holder Claims,* 2002 U.S. Dist. LEXIS 8709, at *22 (N.D. Ill May 9, 2002) ("The issues of law and fact that flow from Defendants' alleged misstatements and omissions predominate over any individual issue."); *Spinelli,* 265 F.R.D. at 601.  Furthermore, a class action is the superior vehicle here because of the large size of the class located throughout the country and the small amount of damages each Class Member suffered. Thus, as practicable matter, it would be economically infeasible for most putative Class Members to retain a private attorney to pursue individual litigation against HSBC for their individual compensatory recoveries.  *See Amchem,* 521 U.S. at 616, ("[T]he[] interests [of individuals in conducting separate lawsuits] may be theoretic rather than practical [where]…the amounts at state for individuals [are] so small that separate suits would be impractical." (quotation omitted)); 7A Wright and Miller, Federal Practice and Procedure, Sec. 1779 at 557 ("[A] group composed of consumers…typically will be unable to pursue their claims on an

individual basis because the cost of doing so exceeds any recovery they might secure."); *Bellows v. NCO Fin. Sys.,* Case No. 3:07-cv-01413-W-AJB, 2008 U.S Dist. LEXIS 114451, at *20 (S.D. Cal. Sept. 5, 2008) ("The class action procedure is the superior mechanism for dispute resolution in this matter…Through the class action procedure these common claims can be brought in one proceeding, thereby eliminating unnecessary duplication, preserving limited judicial resources, and achieving economies of time, effort, and expense.").  In short, it is evident that most putative Class Members have no overriding interest in conducting separate lawsuits against HSBC. Finally, superiority of the class mechanism in the present case is further highlighted by the absence of manageability issues, as a settlement class does not present the issues of manageability that might arise with a litigated class.  *See Amchem Prods.*, 117 S. Ct. at 2248. Accordingly, because common questions of law and fact predominate over individual questions, and a class action is the superior vehicle for resolving Plaintiffs' claims, Rule 23(b) is satisfied.

### D.     The Proposed Notice Program is Adequate

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.'" *Manual for Complex Litig.*, *supra*, at § 21.312.  In order to protect the rights of absent class members, the Court must provide the best notice practicable to class members.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-175 (1974).  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  "Rule 23 . . . requires that individual notice in [opt-out] actions be given to class members who can be identified through reasonable efforts.  Those who cannot be

readily identified must be given 'the best notice practicable under the circumstances.'" *Manual for Complex Litig.*, at § 21.311. "To satisfy this standard, the notice must inform class members of (1) the nature of the litigation; (2) the settlement's general terms; (3) where complete information can be located; and (4) the time and place of the fairness hearing and that objectors may be heard." *In re Cendant*, 109 F. Supp. 2d at 254; *see also Manual for Compl. Lit., supra*, at § 21.312 (listing relevant factors).

The parties have negotiated the form of notices (the "Notices") to be disseminated to the Settlement Class to notify them of the terms of the Settlement and their rights in connection with the Settlement. The proposed forms of notice, attached as Exhibits B, C, D, E and H to the Settlement Agreement, satisfy all of the criteria above. In particular, HSBC and/or the Settlement Administrator shall provide Class Notice in the forms approved by the Court, as detailed below, by the Notice Deadline:

   a).   <u>Statement Notice</u>:  HSBC shall deliver the Statement Notice to Settlement Class Members who are current HSBC cardmembers at the time of Class Notice and who receive a periodic billing statement during the billing cycle in which the Statement Notice is provided, by inserting a Statement Notice into the envelope containing their periodic statement. The cost of postage and envelope stuffing for the Statement Notice shall be paid by HSBC and shall not be paid from the Settlement Fund. The Statement Notice shall advise Settlement Class Members of their membership in the proposed Settlement Class and refer them to the Settlement Website, described below, the address of the Settlement Administrator and a toll-free number for the Claim Form and details regarding the Settlement.

b).   <u>Email Notice</u>:   At its sole option, HSBC may provide Class Notice via email to Settlement Class Members who are current HSBC cardmembers and who have elected to receive communication from HSBC by email.  The Email Notice shall include the Settlement Website address (described below) and, if reasonably possible, a link to the Settlement Website.  The subject line of the email shall read: "Notice of Class-Action Settlement Regarding HSBC Debt Suspension / Debt Cancellation Products."

c).   <u>Postcard Notice</u>: To the extent Settlement Class Members can be identified by HSBC through reasonable review of relevant records, the Settlement Administrator shall mail the Postcard Notice to the Settlement Class Member who are not current HSBC cardmembers at the time of the Statement Notice is provided and to current HSBC cardmembers who do not receive Statement Notice or Email Notice.  The Settlement Administrator shall mail the Postcard Notice to the most recent address shown in HSBC's reasonably accessible account records after updating those addresses using the National Change of Address database; no re-mailing of returned Postcard Notices shall be required.  The Postcard Notice shall advise the Settlement Class Members of their membership in the proposed Settlement Class and refer them to the Settlement Website and a toll-free number for the Full Notice, the Claims Form and details regarding the Settlement.

d).   <u>Internet Notice</u>: The Settlement Administrator will establish the "Settlement Website" which shall allow Settlement Class Members to download or print the Full Notice, the Claim Form, a complete copy of this Agreement and the Preliminary Approval Order.  The website will also include a toll-free number for those who prefer copies of the Claim Form, Full Notice, Settlement Agreement and/or Preliminary

-29-

Approval Order to be mailed to them.  The Settlement Administrator also may provide an electronic Claim Form which can be submitted electronically through the Settlement Website.  The Settlement Website shall be made accessible to the public no later than the date on which any form of Class Notice is first provided and shall remain accessible until the Effective Date has occurred and the Settlement Fund has been exhausted.

     e).   <u>Publication Notice:</u>  The Settlement Administrator shall publish the Publication Notice once the national edition of USA Today, advertising Settlement Class Members in the proposed Settlement Class and referring them to the Settlement Website and a toll-free number for the full Notice, the Claim Form and details regarding Settlement.

The notices provide all pertinent information and fully inform the Class members of this Litigation, the Settlement, and what actions they may take.  Additionally, the notices are clear and straightforward, providing putative Class Members with more than enough information to evaluate the settlement and take action regarding their rights.  In short, upon notification of the Settlement, Settlement Class Members have three choices: (1) approve the Settlement and share in the Settlement benefits by submitting a valid claim form; (2) exclude themselves from the Settlement by "opting out" of the class, in which case they will not participate in the Settlement recovery and will retain their individual claims against the Defendants; or (3) remain in the Class but submit a written objection to the Court setting forth reasons why the Settlement and/or the fee application is unfair.  Importantly, in order to participate in the Settlement, a Settlement Class Member must submit a claim form within the time specified in the Preliminary Approval Order. Similarly, a Settlement Class Member who wishes to be excluded from the Settlement must submit a timely request for exclusion, and any Settlement Class Member who wishes to object to

the Settlement must file and serve such objections within the time specified and in the manner specified in the Preliminary Approval Order.  Objecting parties can submit a brief in opposition to any part of the Settlement and can appear at the final approval hearing to present their arguments if they have timely filed a notice of intent to appear.

The notice in this matter is adequate under Rule 23(c)(2).  *See In re Prudential*, 962 F. Supp. at 527 (D.N.J. 1997) (actual notice by mail and published notice was "ideal"); *see also In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 482 (E.D. Pa. 2010). Accordingly, this Court should find that the notices and the procedures for its dissemination are reasonably calculated to provide notice of the Settlement to the Settlement Class, thereby, satisfying the requirements of due process.  *See Winn-Dixie Stores, Inc., ERISA Litig.*, No. 3:04-cv-194-33MCR, 2008 U.S. Dist. LEXIS 21988, at *21 (M.D. Fla. March 20, 2008).

## E.      Scheduling a Final Approval Hearing is Appropriate

The last step in the approval process is a final fairness hearing at which the Court may hear all evidence and argument necessary to make its Settlement evaluation.  Proponents of the Settlement will appear in person and explain the terms and conditions of the Settlement and offer argument in support of final approval.  Objectors may appear in person and be heard by the Court.  After the final approval hearing, the Court will then determine after the final approval hearing whether the Settlement should be approved and whether to enter a final order and judgment under Rule 23(e).  Plaintiffs request that the Court set a date for a hearing on final approval approximately 200 days after the entry of an Order Granting Preliminary Approval at the Court's convenience.

## V.      CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the proposed Class be conditionally certified, the Settlement be preliminarily approved, the notice plan be accepted by

the Court and notification of the Settlement be sent to the Class, and a date of the Fairness

Hearing be set.

Respectfully submitted,

**GOLOMB & HONIK, P.C.**

/s/ KJG2445
Ruben Honik, Esquire
Richard M. Golomb, Esquire
Kenneth J. Grunfeld, Esquire
1515 Market Street, Suite 1100
Philadelphia, PA 19102
(215) 985-9177 (Phone)
(215) 985-4169 (Fax)
rhonik@golombhonik.com
rgolomb@golombhonik.com
kgrunfeld@golombhonik.com

**NAGEL RICE, LLP**
Diane E. Sammons
Bruce H. Nagel
Jay J. Rice
103 Eisenhower Parkway, Suite 103
Roseland, New Jersey 07068
Tel: (973) 618-0400
Fax: (973) 618-9194
dsammons@nagelrice.com
bnagel@nagelrice.com
jrice@nagelrice.com

**TAUS, CEBULASH & LANDAU, LLP**
Brett Cebulash, Esq.
Kevin Landau, Esq.
80 Maiden Lane, Suite 1204
New York, NY  10038
Telephone (212) 931-0704
Facsimile: (212) 931-0703
Email: bcebulash@tcllaw.com
        klandau@tcllaw.com

*Co-Lead Class Counsel and Attorneys for the*
*Plaintiffs*

**DATED:   January 27, 2012**

## CERTIFICATE OF SERVICE

I, KENNETH J. GRUNFELD, ESQUIRE, do hereby certify that a true and correct copy of the foregoing **Plaintiffs' Motion for Preliminary Approval and Memorandum of Law in Support of Motion** was served on all counsel of record on the date shown below via CM/ECF Court Filing System:

**GOLOMB & HONIK, P.C.**

/s/KJG2445

**KENNETH J. GRUNFELD, ESQUIRE**
*Counsel for Plaintiffs*
Attorney I.D. No: 84121
**Golomb & Honik, P.C.**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
(215) 985-9177
(215) 985-4196 (Fax)
kgrunfeld@golombhonik.com

**DATED:** <u>January 27, 2012</u>